# Wytheville.

## CITY OF NORFOLK v. FLYNN.

### June 11, 1903.

#### Absent, Cardwell, J.

1. CITY OF NORFOLK—*Police Powers—Adulterated Milk.*—The police power of the State, so far as necessary to protect the health of the inhabitants of the city of Norfolk, has been delegated to that city, and the city may enact reasonable ordinances to protect its citizens from the sale of impure, adulterated, or diluted milk.

2. CITY OF NORFOLK—*Milk Inspection—Ordinances—Extra-Territorial Effect—Tax on Farm Products.*—The ordinance of the city of Norfolk which provides for the inspection of milk sold in the city and which requires vendors of milk in the city, whether their dairies are located inside or outside of the city, to register for that purpose, and to pay a registration fee of fifty cents per cow, to cover expenses of the inspection required by the ordinance, is not extra-territorial in its effects. It only touches those who come within the city limits to dispose of their milk. Nor do the provisions of the ordinance violate the Act of Assembly approved March 3, 1896, forbidding any city or town to impose or collect any tax, fine, or other penalty for selling farm or domestic products at other places in the city or town than the regular market houses. The charge made is in no sense a tax, fine, or penalty, but a legitimate fee designed as compensation for service rendered, and to enable the city to bear the expenses of a valid police regulation.

Error to a judgment of the Circuit Court of the city of Norfolk, rendered May 12, 1902, reversing a judgment of the Police Justice of said city, imposing a fine on defendant in error for violation of the city ordinance.

*Reversed.*

The opinion states the case.

*Walter H. Taylor,* for the plaintiff in error.

*Burroughs & Bro.,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The police justice of the city of Norfolk issued a warrant against Joseph E. Flynn for violation of an ordinance creating the office of milk inspector, defining his duties, and regulating the sale of milk in the city of Norfolk. The police justice entered a judgment against Flynn, from which an appeal was taken to the Circuit Court of the city of Norfolk, where it was reversed, and the case is now before us upon a writ of error to the judgment of that court.

The ordinance in question prohibits the sale of impure, diluted, or unwholesome milk, prescribes a test of what constitutes pure milk, creates the office of milk inspector, prescribes his duties, requires him to make frequent inspection and analysis of the milk sold in the city, and directs him to report all violations of the ordinance to the Board of Health.

By section 344, c. 43, of the Norfolk City Code, it is provided that "every person who conveys milk in carriages or otherwise for the purpose of selling the same, and those who sell or offer it for sale in a store, booth, stand or market place in the city of Norfolk, shall register annually in the books of said inspector, on the first day of May of each year, or within thirty days thereafter, and be licensed by said inspector to sell milk within the limits of the city for one year. Before said license is granted the applicant shall be required to pay fifty cents per cow, if he keeps cows, and two dollars for each stand or depot, if he has a stand or depot, for the sale of milk. The amount so collected shall be used exclusively for the purpose of paying the salary and expenses of said inspector. And who-

ever neglects so to register or violates any of the provisions of
this section shall be punished for each offence by a fine of not
less than five nor more than twenty dollars.   The inspector
shall pay over monthly to the treasurer of the city all sums
collected by him."

Defendant contends that this section is invalid because, first,
no ordinance of the city of Norfolk can have the force of law
beyond the corporate limits of the city; and, secondly, because
it is in violation of an act approved March 3, 1896 (Acts 1895-
'96, p. 685, c. 625), which is as follows:   "It shall be unlawful
for any city or town of this State, or of any agent or officer of
any such city or town, to impose or collect any tax, fine or other
penalty upon any person selling their farm and domestic pro-
ducts within the limits of any such town or city outside of and
not within the regular market-houses and sheds of such cities
and towns."

The police power of the State, so far as it is necessary to pro-
tect the health of its inhabitants, has been delegated to the city
of Norfolk.   The general nature, character, and extent of the.
police power has been so recently investigated by this court
that we deem it unnecessary to do more than refer to the cases.
*Town of Farmville* v. *Walker*, 43 S. E. 558, *ante* p. ?⸝⸝, *City
of Danville* v. *Hatcher* (just decided by this court); *ante* p.⸝⸝⸝ ,
44 S. E. 723.

It is manifest upon the face of the ordinance in question that
it was passed in the exercise of the police power of the city,
and that its sole object was to secure to the people of Norfolk
pure and unadulterated milk.   It is a matter of common knowl-
edge that milk is a necessary food of the sick and of the infirm,
of the old and of the young; that through the agency of impure
milk the germs of many diseases are disseminated; and even
where there is the absence of any deleterious impurity or the
germs of specific diseases, adulterated or diluted milk is not
wholesome and nutritious, and its sale in its least injurious

aspect is a fraud upon the community. Against such practices it is the duty of the constituted authorities to protect the communities under their control. The ordinance in question is not extra-territorial in its effect. It is not intended to operate beyond the limits of the city of Norfolk. It only touches those who come within the limits of the city to dispose of their milk.

This subject was considered in the case of *State* v. *Nelson*, 66 Minn. 166, 68 N. W. 1066, 34 L. R. A. 318, 61 Am. St. Rep. 399. In that case the objection was made "that the provisions of the ordinance are not within the limits prescribed for it by the statute, for the reason that it is attempted to make its operation extra-territorial, in that it provides for the inspection of dairies and dairy herds outside the city limits. There is no merit in this point.

"The manifest purpose of the statute under which this ordinance was passed was to enable the City Council to adopt such reasonable police regulations as would prevent the sale of unwholesome milk within the city, and not merely to prevent the keeping of unhealthy dairy herds within the city limits. It is a matter of common knowledge that much of the milk sold in a city is produced in dairies situated outside the city limits. Any police regulations that did not provide means for insuring the wholesomeness of milk thus brought into the city for sale and consumption would furnish very inadequate protection to the lives and health of its citizens. It is also a matter of common knowledge, as well as of proof in this case, that the wholesomeness of milk cannot always be determined by an examination of the milk itself. To determine it does or does not contain germs of any contagious or infectious disease, it is necessary to inspect the animals which produce it. The inspection of dairies or dairy herds outside the city limits, provided for by this ordinance, applies only to those whose milk product it is proposed to sell in the city. The provisions of the ordinance in that regard go only so far as it is reasonably necessary to

prevent the milk of diseased cows being sold within the city. This inspection is wholly voluntary on the part of the owner of the dairy or dairy herd. If he does not choose to submit to such inspection, the result merely is that he or the one to whom he furnishes milk cannot obtain a license to sell milk within the city. The ordinance has no extra-territorial operation, and there has been no attempt to give it any such effect. The only subject upon which it operates is the sale of milk within the city."

We do not think that there is any merit in the first contention.

The city of Norfolk has no power to impose any tax, fine, or penalty on persons selling their own farm and domestic products in contravention of the Act of Assembly of March, 1896, already quoted. The ordinance of the city under consideration does not, in our judgment levy a tax or impose a fine or penalty within the purview of that act. We are of opinion that it was not the purpose of the Legislature in that act to impose any restriction upon the city in the exercise of the police power delegated to it for the protection of the health of its citizens; and, unless plainly required so to do, we should be indisposed to adopt a construction which would render the city powerless to protect the health of its citizens from the sale of impure or adulterated milk. The means adopted seem to us to be reasonable. It was necessary to the end in view that there should be an inspector, that he should have the power to take samples of the milk and have them analyzed, and his duties involved expenses which it was proper that those engaged in the sale of milk should bear. A license from the inspector was evidence to the community that they could with safety purchase milk from the dealer to whom it was issued. He who is licensed should not complain, because he derives a direct and important benefit from it, from which he is required to pay a reasonable compensation. The dealer discovered in im-

proper practices in the effort to foist upon the community milk unfit for use has no right to complain if he has been detected in such practices. What the dealers are required to pay by the ordinance is not for purposes of revenue, and is not a tax, but is an inspection fee, designed as a compensation for the service rendered.

The Supreme Court of the United States is jealous to guard against any encroachment by the States upon the power of the Federal Government to regulate commerce, yet it has been held that fees for the sanitary examination of vessels under the quarantine laws of the States, though they may in some degree tend to regulate commerce with foreign nations and among the States, are a valid exercise of the police power.

In *Morgan Railroad Co. v. Board of Health of Louisiana*, 118 U. S. 455, 6 Sup. Ct. 1114, 30 L. Ed. 237, the court, after discussing the quarantine laws of the State of Louisiana and their various charges for services rendered incident thereto, in answer to the claim that the sums thus exacted were in effect a tonnage tax, forbidden by the Constitution of the United States, and exclusively within the power of Congress to regulate, said: "In the present case we are of opinion that the fee complained of is not a tonnage tax; that, in fact, it is not a 'tax,' within the true meaning of that word as used in the Constitution, but is a compensation for a service rendered, as part of the quarantine system of all countries, to the vessel, which receives the certificate that declares it free from further quarantine requirements."

Paraphrasing the language of the court in that case, the city of Norfolk says to the dealer: If you appear free from objection, you are relieved by the officer's certificate of all responsibility on that subject. For this examination you must pay. The danger comes from you, and, though it may turn out in your case there is no danger, yet, as you belong to a class from which this kind of injury comes, you must pay for the examination which distinguishes you from others of that class.

Opinion.

We are of opinion that the ordinance under investigation does not, and was not designed to, act beyond the limits of the city of Norfolk, but operates only upon those who undertake to sell milk within the jurisdiction of the city.

We are of opinion that it is a reasonable exercise of the police power, and that the charges which it imposes are in no sense a tax, penalty, or fine, but fees for services rendered; and it is therefore not repugnant to the Act of Assembly relied upon by defendant in error.

The judgment of the Circuit Court must be reversed, and this court will enter such judgment as the Circuit Court should have entered.

*Reversed.*