Argued September 5, decided September 19, 1911.

## STATE v. CORVALLIS & EASTERN R. CO.

[117 Pac. 980.]

RAILROADS—REGULATION BY RAILROAD COMMISSION—ACTION FOR PENALTIES—SUFFICIENCY OF COMPLAINT—"REGULAR STATION."

1. The words "regular station," as used in Railroad Commission Act (Laws 1907, p. 75) § 22, requiring every railroad to provide and maintain adequate and suitable depot and toilet buildings at its regular stations where an agent is maintained, means a place established on the road where trains are regularly stopped to receive and discharge passengers and freight, and where the carrier keeps an agent for the transaction of business, so that, in an action against a railroad company for a penalty for failure to construct a depot building pursuant to an order of the Railroad Commission, it may be inferred, from an averment that the station is a "regular station," that defendant maintains an agent there.

RAILROADS—REGULATION BY COMMISSION—ACTION FOR PENALTIES—ALLEGATIONS OF COMPLAINT.

2. Since Railroad Commission Act (Laws 1907, p. 87) § 31, provides that any service prescribed by the commission shall be *prima facie* reasonable, until found otherwise in an action for that purpose, the reasonableness of an order of the Railroad Commission prescribing service can only be assailed in a proceeding under section 32, authorizing any railroad affected by an order of the commission to commence suit against the commissioners to vacate the order, on the ground that the service required is unreasonable; so that, in an action by the State against a railroad company for a penalty for noncompliance with an order requiring the erection of a depot, the complaint need not allege that the erection and maintenance of a depot was essential, nor state the volume of railroad business transacted at the station, since the order of the commission, not having been vacated, establishes *prima facie* the reasonableness of such service.

CARRIERS—REGULATION.

3. Under the rule that the owner of property set apart to a public use impliedly agrees to be governed by such reasonable regulations as the public may adopt to promote the common convenience and general welfare, the State may enact reasonable regulations fixing the rates for transportation of freight and passengers, or prescribing any reasonable rules as to service, if such regulations do not interfere with interstate commerce, or take property for public use without just compensation, or violate any express charter provision granted by the State to the corporation.

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.

4. While the legislature cannot delegate its power to enact laws, it may direct that the application of a statute to a given district or to a specific state of facts shall depend upon the existence of certain conditions, to be ascertained in a particular manner, or by particular persons.

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS.

5. Article III,. Constitution Oregon, divides the powers of government into the legislative, the executive, including the administrative, and the judicial departments, and provides that no person charged with official duties under one of them shall exercise any function of another.    The Railroad Commission Act (Laws 1907, p. 71) § 12, requires every railroad to furnish reasonably adequate service, equipment, and facilities.    Section 22 requires every railroad to provide and maintain suitable depot buildings and clean toilet rooms at its regular stations.    Section 28 provides that upon complaint of any person that any service is inadequate the commission may notify the company that complaint has been made, and, after giving it 10 days' notice, may investigate the charge, compelling the attendance of witnesses, etc.; and, if the service be found insufficient, may make such orders in regard thereto as are reasonable.    Section 53 imposes a penalty for neglecting any order of the commission.    *Held,* that the Railroad Commission Act did not violate Article III, Constitution Oregon, by empowering the commission to determine whether railroad companies had complied with their statutory duties as to service, etc., and to prescribe what was a reasonable service, in case they were not rendering such service.

RAILROADS—DEPOTS—DUTY TO ERECT.

6. A common carrier is not required by the common law to provide passenger or freight depots, but may be required to do so by statute.

CONSTITUTIONAL LAW—DELEGATION OF POWERS—REGULATION OF RAILROADS.

7. If railroad companies are required by statute to erect suitable depots, the power to determine when they should be required to erect a depot at a particular place may be delegated to a railroad commission.

RAILROADS— STATUTORY REGULATIONS— RAILROAD COMMISSION LAW—CONSTRUCTION.

8. The Railroad Commission must have express authority for its acts under the Railroad Commission Act, as no authority will be implied.

RAILROADS— REGULATION BY RAILROAD COMMISSION— AUTHORITY OF COMMISSION—ERECTION OF DEPOTS.

9. Railroad Commission Act (Laws 1907, p. 71) § 12, requires every railroad to furnish reasonably adequate service, equipment, and facilities, and section 28 provides that upon complaint that any service in the transportation of persons or property is inadequate notice must be given the company complained of which may file an answer, whereupon a hearing shall be ordered; and, if it be found that the service is inadequate, the commission may make a reasonable order as to the service.    *Held,* that the Railroad Commission, upon proper investigation, may make an order requiring a railroad company to erect a passenger waiting room and freight depot at its station.

RAILROADS—AUTHORITY OF RAILROAD COMMISSION—"SERVICE."

10. The railroad commission may require a railroad company to maintain an agent at the depot to enable the public to transact business with

him; the word "service" as used in the act including the maintenance of a station agent.

RAILROADS—REGULATIONS—ACTIONS FOR PENALTY—ADMISSION OF EVIDENCE.

11. In an action by the State against a railroad company for a penalty for a violation of an order of the Railroad Commission requiring the erection of a passenger and freight depot, evidence that defendant had not employed any one at the station with whom shippers could negotiate for transporting freight was admissible.

From Linn: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by the State of Oregon against the Corvallis & Eastern Railroad Company, a corporation, to recover a penalty for failure to comply with an order of the Railroad Commission. The complaint states in effect that the defendant is, and at all times therein alleged was, a private corporation owning and operating a railroad extending from Yaquina, Oregon, to Detroit, in this State, its line of railway passing through the town of Lyons, which latter village "is a regular station"; that certain named persons, constituting the Railroad Commission of Oregon, in a proceeding before them, wherein T. E. Wall and others were complainants and the defendant herein was defendant, made an order, July 21, 1908, after due hearing and consideration, that the defendant build and maintain at Lyons a depot containing a waiting room for passengers and a room for freight in less than car load lots, containing in such apartments not less than 150 to 250 square feet, respectively; to erect and maintain separate toilets, or a toilet building with separate compartments; and also to engage and keep employed at that station a caretaker, with whom the public might transact business relating to the transportation of freight and passengers, which improvements were required to be made and the servant employed within 45 days after the service upon the defendant of such order, which was duly made July 22, 1908; that, though more than the time so limited had expired, the defendant had failed and refused

to comply with such demand, in consequence of which it had become liable to the plaintiff in the sum of $10,000, for which judgment was demanded.

A demurrer to the complaint, on the ground that it did not state sufficient facts, and that the court did not have jurisdiction of the subject of the action,. was overruled. An answer and a reply put in issue the facts averred by the respective parties, whereupon a trial was had, and, a judgment for the sum of $200 having been rendered against the defendant, it appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* assistant attorney general, *Mr. Roy F. Shields,* assistant attorney general, and *Mr. William P. Lord,* with an oral argument by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is maintained that in overruling the demurrer an error was committed. It is argued that as the complaint fails to aver that defendant maintained an agent at Lyons plaintiff's primary pleading does not state facts sufficient to constitute a cause of action. Section 22 of the railroad commission act, so far as. deemed to be involved on this branch of the inquiry, is as follows:

"It shall be the duty of every railroad to provide_and maintain adequate depots and depot buildings, and clean and suitable toilet rooms, or buildings at its regular stations where an agent is maintained." Laws Or. 1907, p. 75.

As we view the quoted language, a "regular station" is a place established by a railroad company on the line of its railway where some or all trains are regularly halted to receive and discharge passengers and freight, and where,. for the transaction of business, the carrier keeps

an agent with whom the public is authorized to deal. 26 Am. & Eng. Enc. Law (2 ed.) 495; *Land* v. *Wilmington & Weldon R. Co.,* 104 N. C. 48 (10 S. E. 80). The clause, "where an agent is maintained," adds nothing to the phrase, "at its regular stations." It seems, however, to explain the meaning of the latter term. It is reasonably to be implied from the averment that Lyons is a regular station on the railroad, that the defendant maintains at that place an agent for the accommodation of passengers, etc., and is tantamount to an allegation to that effect. The complaint is sufficient in that particular.

2. It is contended that because the volume of business transacted by the defendant at Lyons is not given, nor is it averred that the erection and maintenance of any railroad buildings at that place are necessary, the complaint is insufficient. Section 31 of the act under consideration declares that any service prescribed to be rendered by the commission shall be *prima facie* reasonable, until finally found to be otherwise, in an action brought for that purpose. Section 32 provides that any railroad interested in or affected by an order of the commission, being dissatisfied therewith, may commence a suit against the commissioners as defendants, to vacate and set aside such order on the ground that the service demanded is unreasonable. It will be noted that the reasonableness of an order of the commissioners, prescribing any service, can only be challenged by a railroad company, in a suit instituted for that purpose by it as plaintiff against the commissioners as defendants. As the order fixing the service to be performed is *prima facie* reasonable, it was unnecessary to allege that fact in the complaint, or to aver that the erection and maintenance of a depot at Lyons was essential, or to state the volume of railroad business transacted at that place.

3. It is insisted that the court did not have jurisdiction of the cause, for that the railroad commission act

attempts to delegate to the commissioners legislative, executive and judicial powers, in contravention of Article III of the Constitution of Oregon, and such being the case an error was committed in overruling the demurrer. That part of the organic act referred to is as follows:

"The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

A brief reference to some of the provisions of the statute in question, in addition to the sections hereinbefore adverted to, is necessary to understand the legal principle involved. The act in force when this case was tried creates a commission, consisting of three persons, collectively known as the Railroad Commission of Oregon. Section 1. The term "railroad" as used therein is defined. Section 11. Every such railroad is required to furnish reasonably adequate service, equipment, and facilities. Section 12. It is incumbent upon every railroad to provide and maintain suitable depot buildings and clean toilet rooms at its regular stations. Section 22. Upon complaint of any person that any service appertaining to the transportation of persons or property is inadequate, the commission may notify the railroad company informed against, that complaint has been made, and ten days after such notice has been given the commission may investigate the charge, compelling the attendance of witnesses and the production of books and papers. If upon such examination the service shall be found to be insufficient, the commission is empowered to make such orders respecting the matter as shall be determined to be reasonable, which regulation shall be observed and followed in the future. Section 28. If any railroad shall fail, neglect, or refuse to obey any order made by the com-

missioners, for every such violation it shall forfeit and pay into the State Treasury a sum of not less than $100 nor more than $10,000 for such offense. Section 53. Any forfeiture or penalty so prescribed may be recovered by an action brought thereon in the name of the State of Oregon. Section 57. It will thus be seen that the Railroad Commission of Oregon is required to receive complaints of certain matters, when properly made against a railroad company for a violation of any of the duties enjoined by the statute, to give notice thereof to the company, to set the cause for hearing, to determine the issues involved, and to make the necessary orders in the premises. Does an exercise of the powers so granted trench upon Article III of our Constitution?

As a preliminary matter, it may be said that the provisions of a written constitution, distributing legislative, executive, and judicial powers to different departments and the emphatic declaration in the fundamental law that each branch must be kept separate, were evidently designed to establish and perpetuate an independent commonwealth. "The safety of free government," says Mr. Justice VANN, in *People ex rel. v. Howland*, 155 N. Y. 270, 282 (49 N. E. 775, 779: 41 L. R. A. 838), "rests upon the independence of each branch and the even balance of power between the three. Unite any two of them, and they will absorb the third, with absolute power as a result. Weaken any one of them by making it unduly dependent upon another, and a tendency toward the same evil follows. It is not merely for convenience in the transaction of business that they are kept separate by the constitution, but for the preservation of liberty itself, which is ended by the union of the three functions in one man, or in one body of men. It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others." To the same effect, see Story, Const.

(5 ed.) §§ 520 and 521 where he states that Montesquieu seems to have been the originator of the political maxim of the division of the three great powers of government. Judge Story, at section 527 of the text-book mentioned, referring to the distribution of such powers, remarks:

"Indeed, there is not a single constitution of any State in the Union, which does not practically embrace some acknowledgment of the maxim, and at the same time some admixture of powers constituting an exception to it."

As illustrative of the rule and the exception thus adverted to, see the case of *Winchester & Strasburg R. Co. v. Commonwealth,* 106 Va. 264 (55 S. E. 692).

Considering the principal inquiry, it is a well-recognized rule of law that when property is set apart by its owner to a public use he, by the dedication, impliedly agrees to be governed by such reasonable regulations as the public may adopt that are designed to promote the common convenience or to advance the general welfare. "Property," says Mr. Chief Justice WAITE, in *Munn v. Illinois,* 94 U. S. 113, 126 (24 L. Ed. 77), "does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control." From the principle thus announced it follows that the legislative assembly of a state, as the agent and representative of the public, may enact any reasonable regulation ordaining, within the limits of its jurisdiction, rates for the transportation of freight and passengers, or prescribing any reasonable rule governing the service to be performed by the carrier, when such

rules neither interfere with interstate traffic nor amount to a taking of property for a public use without just compensation, nor violate any express charter provision granted by the State to the corporation. *Chicago, Burlington & Quincy R. Co.* v. *Iowa,* 94 U. S. 155 (24 L. Ed. 94) ; *Peik* v. *Chicago & Northwestern R. Co.,* 94 U. S. 164 (24 L. Ed. 97) ; *Dow* v. *Beidelman,* 125 U. S. 680 (8 Sup. Ct. 1028 : 31 L. Ed. 841).

4. The rule is universal that, as a legislative assembly exercises an authority conferred by the constitution, it cannot delegate the power to enact laws. It may, however, direct that the application of a statute to a designated district or to a specified state of facts shall depend upon the existence of certain conditions, to be ascertained and determined in a particular manner. Thus a statute authorizing the location of a county seat at one of two or more designated places may be delegated to the qualified electors of a county, to determine, at an election to be held for that purpose, the place of their choice. *McWhirter* v. *Brainard,* 5 Or. 426, 430. "The power of location." says the court in that case,\ "is exercised by the legislative assembly, but it takes effect in a peculiar mode, or not at all, by a vote of the electors interested." So, too, it has been held that the question of whether or not the provisions of a general local option law, containing a complete declaration of legislative will, might, pursuant to the terms of the act, be applied to a particular district by a vote of the electors thereof, and that such statute did not contravene Section 21 of Article I of the organic act, declaring that no law shall "be passed, the taking effect of which shall be made to depend upon any authority except as provided in this constitution." *Fouts* v. *Hood River,* 46 Or. 492 (81 Pac. 370 : 1 L. R. A. [N. S.] 483). "The legislature," says Mr. Justice AGNEW, in *Locke's Appeal,* 72 Pa. 491, 498 (13 Am. Rep. 716), "cannot delegate its power to make a law ; but it can make

a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.  To deny this would be to stop the wheels of government.  There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."  This excerpt has been quoted and the principle thus announced followed in this State.  *State* v. *Briggs,* 45 Or. 366, 370 (77 Pac. 750: 78 Pac. 361) ; *Sandys* v. *Williams,* 46 Or. 327, 335 (80 Pac. 642).

5. Where a statute creates a board of railroad commissioners and empowers it to make rules and regulations for the government of common carriers, the act itself is the controlling feature, and does not amount to a delegation of legislative authority.  2 Elliott, Railroads (2 ed.) § 678.  It will be remembered that the statute under consideration declares that "every such railroad is hereby required to furnish reasonably adequate service, equipment and facilities," and that "upon complaint of any person * * that any service is inadequate the commission may notify the railroad complained of," etc.  Section 28.  It will be observed that the sufficiency of the facilities and the adequacy of the service can be challenged by complaint of any person, whereupon may be joined an issue that can be determined by the Railroad Commission. When a rate of transportation results from such an investigation, the adjustment of the compensation thus considered to be reasonable for the service performed partakes of some of the characteristics of an exercise of legislation, but it is not for that reason violative of the organic law of the State.

The adoption by a railroad commission of regulations fixing the measure of charges which a common carrier may exact for the transportation of freight and passen-

gers, or the determination of any other issue of which the commission has jurisdiction, is more in the nature of an administrative act, whereby the existence of certain facts is ascertained, upon the determination of which the statute regulating such matters operates. *Michigan Central R. Co.* v. *Michigan Railroad Commission,* 160 Mich. 355, 361 (125 N. W. 549); *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 394 (14 Sup. Ct. 1047: 38 L. Ed. 1014). The legislative assembly of Oregon, by the act declaring the obligations which the public interest impose upon a railroad company, and enumerating the duties devolving upon the Railroad Commission, has prescribed the rule of action that controls the carrier; and intrusting to the commission the question of whether or not the railroad company, in the management of its business affecting the public, complies with the requirements of the statute, and if not to prescribe the reasonable service demanded, is not violative of Article III of the State Constitution. Thus, in *Stone* v. *Yazoo & Mississippi Valley R. Co.,* 62 Miss. 607, 645 (52 Am. Rep. 193), a statute of Mississippi creating a railroad commission and authorizing it to fix tariff charges of railroads was challenged on the ground, *inter alia,* that it violated Sections 1 and 2 of Article III of the Constitution of that State. The clauses of the fundamental law referred to were as follows:

"Section 1. The powers of the government of the State of Mississippi shall be divided into three distinct departments and each of them confided to a separate magistracy, to wit: Those which are legislative to one; those which are judicial to another, and those which are executive to another.

"Section 2. No person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Revised Code Miss. 1880, p. 21.

Without discussing the question thus involved, it was held that the act did not trench upon "any provisions of the constitution of the State.

In *Stone* v. *Natchez, Jackson & Columbus R. Co.*, 62 Miss. 646, the questions presented in the preceding case were also involved, but they were not considered, on the ground that the prior decision was controlling in all matters, except the contention that the statute creating the commission violated the obligation of contracts. It was ruled, however, that such controversy was without merit.

In the *Railroad Commission Cases*, 116 U. S. 307, 336 (6 Sup. Ct. 334, 347, 388, 1191: 29 L. Ed. 636), Mr. Chief Justice WAITE, referring to the two cases last mentioned, observes: "The Supreme Court of Mississippi has decided * * that the statute is not repugnant to the constitution of the State, 'in that it creates a commission and charges it with the duty of supervising railroads.' To this we agree, and that is all that need be decided in this case." The principle thus asserted was approved, though the question was not discussed in the opinion of either court.

It was said by Mr. Justice BREWER, in *Chicago & Northwestern R. Co.* v. *Dey* (C. C.), 35 Fed. 866 (1 L. R. A. 744, 750): "While in a general sense * * it must be conceded that the power to fix rates is legislative, yet the line of demarkation between legislative and administrative functions is not always easily discerned. The one runs into the other. The law books are full of statutes unquestionably valid, in which the legislature has been content to simply establish rules and principles, leaving execution and details to other officers." In that case it was maintained, *inter alia,* that an act of the general assembly of Iowa, authorizing a railroad commission to prescribe a standard of compensation for transportation that might be exacted by a railroad company, violated the constitution of that State, which pro-

vides for the distribution of powers in terms similar to the fundamental law of Oregon, except that the executive department does not include the administrative. After adverting to several decisions of other courts, the learned justice disposed of this branch of the case as follows: "For these reasons I conclude that this contention of the complainant cannot be sustained."

In *Michigan Central R. Co.* v. *Michigan Railroad Commission,* 160 Mich. 355 (125 N. W. 549), it was maintained, *inter alia,* that a statute of Michigan creating a railroad commission, which was empowered to adopt rules subsequently to be applied, and to regulate rates for the transportation of freight, violated Section 2 of Article IV of the Constitution of that State, in that the act conferred upon the commission legislative and executive powers. It was held, however, that the legal principle contended for was untenable, and in reviewing many decisions upon the question Mr. Justice STONE determined this branch of the case by saying: "In view of the authorities above referred to and of the rule that the courts will presume in favor of the constitutionality of a law until the contrary plainly appears, we conclude that the act in question is constitutional."

In *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.* v. *Railroad Commission,* 136 Wis. 146, 162 (116 N. W. 905, 911: 17 L. R. A. [N. S.] 821), it was ruled that the legislature could create a *quasi* judicial tribunal, to which might be delegated the authority possessed by the lawmaking body itself to ascertain, determine, and declare facts; the court saying: "The division of governmental powers into executive, legislative, and judicial, while of great importance in the creation or organization of a state, and from the viewpoint of institutional law and otherwise, is not an exact classification." Further in the opinion it is said: "The legislature may delegate any power, not legislative, which it may itself rightfully exercise."

The authority conferred upon the Railroad Commission of Oregon by the statute, to which reference has been made, might have been directly employed by the legislative assembly; but, as the commission is required to perform such service by ascertaining certain facts upon the determination of which the existing law operates, the act under consideration does not trench upon the clause of the State Constitution invoked to defeat its enforcement.   23 Am. & Eng. Enc. Law (2 ed.) 658; 8 Cyc. 832; Beale & Wyman, Railroad Rate Regulation, § 1305; *Oregon Railroad & Navigation Co.* v. *Campbell* (C. C.) 173 Fed. 957.

It is maintained that by the principles of the common law no railroad company could be compelled to erect or maintain a depot or warehouse on the line of its railway; that such ancient rule has not been modified by the enactment of any statute in Oregon commanding the putting up of such structures, nor has the Railroad Commission been empowered to determine when, where, or how depots should be constructed, and such being the case the attempted exercise of the assumed authority was unwarranted, and the court did not have jurisdiction of the subject of the action.

In *South Eastern Railway Co.* v. *Railway Commissioners,* L. R. 5 Q. B. D. 217, 226, in construing Acts of Parliament, directing railroad companies for the better accommodation of the public to erect or enlarge stations and to afford all reasonable facilities for the receiving, forwarding, and delivering of traffic, it was determined by a majority of the court that the term "facilities" was not sufficiently comprehensive to include structural works, and that the Railway Commission had no jurisdiction to entertain an application for an order for the erections and alterations applied for.   In that case Section 2 of an early act (17 & 18 Vict. c. 31) contained the following declaration:

"Every railway company, canal company and railway and canal company shall, according to their respective powers, afford all reasonable facilities for the receiving and forwarding and delivering of traffic upon and from the several railways and canals belonging to or worked by such companies respectively."

Jurisdiction was conferred upon certain courts in case of "any complaint of anything done or omitted in violation or contravention of the act," and such courts might thereupon restrain the company complained of from a further infringement of the enactment, and obedience to such injunction could have been enforced by attachment or by a fine. By the Railways Regulation Act of 1873 (36 & 37 Vict. c. 48), the jurisdiction that had thus been given to the courts was transferred to the Railway Commissioners, but no additional authority was conferred upon them than that bestowed by the earlier statute.

Upon complaint of the town council of Hastings of a violation of the provisions of such act by the South Eastern Railway Company, an order was sought from the Railway Cmmissioners to enlarge the railroad stations at Hastings and St. Leonards, and to make other changes therein. The railway company invoking the common-law jurisdiction of restraining an inferior tribunal from exceeding its powers, applied for a writ of prohibition, inhibiting the Railway Commissioners and the town council from further proceeding in the matter. A demurrer to the declaration put in issue the sufficiency of the enactments to authorize the order which was endeavored to be secured. In deciding that case, Lord Chief Justice COCKBURN speaking for the majority of the court, in answer to the legal principles asserted by counsel for the Railway Commissioners and the town council, says: "Indeed the Solicitor General, in arguing for the defendants even went so far as to maintain that if a company laying down a railway with a single line

of rails, had taken power to raise money and lay down a second line, and the traffic was sufficient to call for it, the commissioners would have authority to order the company against their will to raise the money and lay down such second line of rails.  Nay, if the argument is to be carried logically into all its ulterior consequences, I can see no reason why, if it is to prevail, it will not be competent to the commissioners in the interest of the traffic to reduce the tolls on a railway to their minimum, and thus to take this most important part of their business out of the hands of a company." The potency of the conclusion thus reached is very much impaired by the dissenting opinion of Justice LUSH, who, referring to the statute to be construed, propounded the following question:  "The particular phrase which creates the difficulty is large enough to admit of a wider or a narrower meaning, and a preliminary question arises, namely, What is the rule of construction to be applied to it?  Is the act a remedial or a penal act? and, if remedial, on whose behalf?"  The inquiry is answered as follows:  "This is the question at issue, and I am of opinion that there are provisions of the act which require the larger meaning to be put on the word 'facilities' in this section, and consequently that the view which the commissioners take of the meaning of the act is the right one."  We believe this dissenting opinion presents the better reason, which deduction should control the interpretations of the provisions of the act creating the Railroad Commission of Oregon.

6, 7.  At common law it was not incumbent upon a common carrier to provide depots for the accommodation of arriving or departing passengers, or to supply warehouses for storing freight received for transportation or to be delivered to a consignee.  26 Am. & Eng. Enc. Law (2 ed.) 497; *Nashville, Chattanooga & St. Louis Ry. Co.* v. *State,* 137 Ala. 439, 443 (34 South. 401); *People* v. *New York, Lake Erie & Western Ry. Co.,* 104 N. Y.

58 (9 N. E. 826: 58 Am. Rep. 484, 485). Such duty may be imposed, however, by statute, and a legislative assembly by a proper enactment can compel a railroad company to erect and maintain reasonably suitable structures for the benefit or convenience of the public. Beale & Wyman, Railroad Rate Regulation, § 224; 2 Elliott, Railroads (2 ed.) § 762; *Commonwealth* v. *Eastern Ry. Co.,* 103 Mass. 254 (4 Am. Rep. 555) ; *Railroad Commission* v. *Portland & Oxford Central Ry. Co.,* 63 Me. 269 (18 Am. Rep. 208). The duty of erecting suitable depots having been imposed upon railroad companies by an act of the legislature, the power to determine when the enactment shall be enforced at a given place may lawfully be delegated to a railroad commission. *Minneapolis & St. Louis R. Co.* v. *Minnesota,* 193 U. S. 53 (24 Sup. Ct. 396: 48 L. Ed. 614). In *State ex rel.* v. *Atlantic Coast Line R. Co.,* 51 Fla. 578, 592 (40 South. 875, 880), it was ruled that a railroad commission could exercise such powers as were expressly or impliedly granted; the court saying: "The Railroad Commissioners of Florida are statutory officers, whose powers are those, and only those, which are conferred upon them expressly or impliedly by the statutes of the State." In *Railroad Commissioners* v. *Oregon R. & Navigation Co.,* 17 Or. 65, 75 (19 Pac. 702, 706: 2 L. R. A. 195), in construing an act creating a board of railroad commissioners, it was ruled that no authority was thereby conferred to require a railroad company to refund to a shipper a sum of money alleged to have been exacted in excess of a reasonable charge for shipment. In deciding that case, Mr. Chief Justice THAYER said: "The jurisdiction of such commission is not given by implication. Commissions of that character are mere creatures of statute, and possess no power except what the statute expressly confers upon them." In *State* v. *Rogers,* 22 Or. 348, 357 (30 Pac. 74, 75), Mr. Justice BEAN, referring to the enactment construed in the preceding case, observes: "This law provided for two

commissioners to be appointed by the Governor, who should have only supervisory powers over railways, and with no authority to in any manner regulate or fix freights or fares for carrying either freight or passengers."

8, 9. Examining the act creating the present Railroad Commission of Oregon in conformity with the rule thus established, that the power conferred by the legislative assembly must be express, and that no authority will be implied, and without determining whether or not such prerogative can be reasonably included, in the absence of specific language to that effect, the statute in question will be reviewed. It will be kept in mind that section 12 of the act requires every railroad, which is a common carrier of this State, to furnish reasonably adequate service, equipment, and facilities. Section 28 declares that, upon complaint of any person that any service affecting the transportation of persons or property is inadequate, notice thereof must be given to the company complained of, which may file an answer to the charges, whereupon a hearing is ordered; and if upon such investigation it shall be found that the service is inadequate the commission is empowered to make such order respecting the service as it shall have determined to be reasonable, and which mandatory direction shall be observed in the future. It will be noted that the statute expressly grants to the commission power to regulate the matter when, upon complaint thereof, it is found that the service is inadequate. The erection and maintenance of reasonably adequate buildings at regular stations on the line of railway necessarily facilitates the dispatch of business, and it is a duty which the enactment imposes on every railroad company for the convenience of passengers and the accommodation of freight. We conclude, therefore, that the Railroad Commission of Oregon possessed plenary power to order the erection of the building described.

10. The construction of a suitable depot at a station would be of little value to passengers and shippers, unless the carrier kept at such place, for a reasonable time before and after the arrival and departure of trains, an agent with whom the public could transact business relating to railroad traffic. The duty to maintain a representative at the place and times indicated is a service which a railroad company owes, and the performance of which may be compelled. We believe that the word "service," as used in the railroad commission act, is expansive enough in its application to include the engagement by the common carrier of a station agent, the employment of whom may be enforced by order of the commissioners. The court, in our opinion, had jurisdiction of the subject of the action, and no error was committed in overruling the demurrer.

11. It is maintained that an error was committed in permitting testimony to be received, over objection and exception, tending to show that at Lyons the defendant had not employed any person with whom shippers could negotiate for the transportation of freight by rail. It is also contended that, as an exception was taken to the following part of the charge, the court erred in giving it, to wit:

"If you find from the evidence that the defendant failed to provide and maintain at its station at Lyons, in Linn County, Oregon, a caretaker or agent with whom any person desiring to transact business with the defendant relating to ordering cars, or the receipt or the delivery of freight at said station, since the date upon which the order of the Railroad Commission of Oregon, described in the complaint and admitted in evidence, went into effect, and prior to the commencement of this suit, then your verdict should be for the plaintiff."

The testimony so objected to and the instruction based thereon were within the issues respecting the alleged failure and neglect of the defendant to comply with the terms of the order of the commissioners, and no errors

were committed as alleged.   It was admitted at the trial in this court that at Lyons the defendant employed an agent, who sold railroad tickets, but that he did not supervise the shipping or receipt of freight.

Believing that the Railroad Commission was empowered to direct the employment of a caretaker at that place, with whom the public might transact business relating to the transportation of passengers and freight, and that the defendant had not complied with the terms of the order, nor erected the depot building commanded, the judgment should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BURNETT, having heard this cause in the lower court, took no part at the trial or in the consideration hereof.

---

On Motion to Dismiss, decided January 18, 1910.
Argued March 2, decided March 21, rehearing denied June 13, 1911.
Further rehearing denied September 19, 1911.