Argued June 22, affirmed November 29, 1927, rehearing denied
January 10, 1928.

# PAUL KORTH v. THE CITY OF PORTLAND
## ET AL.

# J. GEORGESON v. THE CITY OF PORTLAND
## ET AL.

### (261 Pac. 895.)

**Food—City may Require Producers Outside City Selling Milk in
City to Operate Applicances Prescribed by Ordinance and De-
mand Right to Inspect Plant (Sp. Laws 1903, p. 27, § 73,
subd. 1).**

1. City of Portland by virtue of police power conferred by
Special Laws of 1903, page 27, Section 73, subdivision 1, may re-
quire producers of milk outside city limits to be sold within city
to operate with herds and appliances prescribed by ordinance and
demand right to inspect plant.

**Food—Ordinance, Requiring Person Selling Milk Within City to
Comply With Requirements and Obtain License, was Reasonable
and Proper Exercise of Police Power (Sp. Laws 1903, pp. 27,
29, § 73, subds. 1, 21).**

2. Ordinance of City of Portland, requiring all persons selling
milk within the city to comply with requirements of ordinance and
to obtain license before selling or vending milk within city, was
reasonable police protection and proper exercise of police powers
of city, under Special Laws of 1903, pages 27, 29, Section 73,
subdivisions 1, 21.

**Statutes—Sentence of Statute Relating to Peddler's Licenses, not
Germane to Title, was Nullity, but Did not Affect Other Por-
tions of Act (Laws 1925, p. 401; Const., Art. IV, § 20).**

3. Sentence relating to right of city to impose license fees for
selling milk, in Act of February 26, 1925 (Laws 1925, p. 401),
relating to peddler's licenses, not being in any degree germane to
title of act, was nullity, because in violation of Constitution,
Article IV, Section 20, but other portions of act were not affected.

**Food—Statute Does not Prevent City from Levying Reasonable
License Fee for Sale of Milk to Cover Expense of Inspection
(Laws 1925, p. 401).**

4. Act of February 26, 1925 (Laws 1925, p. 401), prohibiting
exacting license fees for sale by peddling of products from soil,

---

1. See 11 R. C. L. 1100.
2. Validity of regulations as to milk, see notes in 4 Ann. Cas.
119; 5 Ann. Cas. 911; 18 Ann. Cas. 321; Ann. Cas. 1915C, 72; 18
A. L. R. 244; 42 A. L. R. 556; L. R. A. 1917C, 243.
4. See 11 R. C. L. 1102.

does not prevent City of Portland from levying reasonable license fees for sale of milk to cover expense of inspection, since such license fee is not levied for peddling and is not provided for revenue primarily.

**Municipal Corporations—Milk Inspection Ordinance Held not Void, as Conferring on Health Officer Arbitrary Power.**

5. Ordinance of City of Portland, going into detail on subject of requirements, looking to purity of milk offered for consumption within city, and thus describing standard of excellence, leaving to health officer duty to ascertain fact as to whether requirements have been met is not void, as conferring on health officer arbitrary and unregulated power.

**Food—Ordinance, Regulating Sale of Milk, and Requiring License, Held Valid Exercise of Police Power.**

6. Ordinance of City of Portland, regulating sale of milk within city, and requiring license, *held* valid exercise of police power.

---

Constitutional Law, 12 **C. J.**, p. 846, n. 76, 89.

Municipal Corporations, 43 **C. J.**, p. 207, n. 80, p. 219, n. 38, p. 221, n. 70, p. 363, n. 37, p. 547, n. 18.

Statutes, 36 **Cyc.**, p. 980, n. 41, p. 1039, n. 77.

From Multnomah: GEORGE ROSSMAN, Judge.

In Banc.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. E. B. Seabrook.*

For respondents there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, *Mr. H. M. Tomlinson* and *Mr. R. A. Imlay,* Deputies City Attorney, with an oral argument by *Mr. Grant.*

PER CURIAM.—Involved in this decision are two cases commenced against the City of Portland and its officers, seeking to restrain the enforcement of Ordinance No. 48244, relating to furnishing milk for the consumption of the inhabitants of the city. One of these suits was instituted by Paul Korth, the other by

J. Georgeson. Both plaintiffs produce milk on dairy farms owned by them outside of and in the neighborhood of Portland but dispose of their products to residents within the city. Each plaintiff contends that the ordinance exacts a license fee from him before he can be allowed to sell milk within the city, whereas the general laws of the State of Oregon prohibit the enforcement of any such requirement. Likewise, they contend that the ordinance invests the city health officer with arbitrary power unregulated by anything but his own whims and caprices. The plaintiff Korth maintains that the milk which he produces conforms to the standard of purity fixed by the ordinance but that, in producing the same on his dairy farm outside of Portland, he does not have any walls ceiled or painted in the milk-room or washroom; he does not bottle or cap by machine but does so by hand, and there are no stationary hand-basins supplied with running water or connected with any sewer.

The substance of his plaint is that, inasmuch as his milk is admitted by the demurrer to be of standard purity, as he avers, it is unreasonable and oppressive to compel him to spend large sums of money in changing his dairy buildings so as to conform to the requirements of the ordinance. Georgeson contends, not only that the milk he produces conforms to the standard of purity prescribed by the General Laws of Oregon, but also that his equipment and dairy likewise comply with those laws although they do not meet the requirements of the ordinance. The essence of his contention is that the state having prescribed a standard of purity of the milk and regulations for the operation of dairies, the city cannot enforce different or additional requirements or standards.

After alleging the existence of the City of Portland as a municipality and the official character of its officers, the complaint avers the enactment of the Ordinance, No. 4824, approved by the mayor of the city November 13, 1925. The pleading goes on to state, in substance, that the plaintiff for some years has been operating a dairy in Multnomah County but outside of the City of Portland and does now transport and has been transporting the milk produced at said dairy into the city, selling and distributing it to customers therein, stating that: "The milk so produced by plaintiff at said dairy and so sold has always been and now continues to be of a standard equal to that prescribed by said ordinance," giving in terms the 8.5 per cent solids not fat and not less than 3.5 per cent milk-fat and has a maximum bacterial count of less than 20,000 per cubic centimeter. The plaintiff then goes on and avows that he does not have any ceilings in his barn, nor are the walls ceiled or painted. Neither are the walls or ceilings of the milk-room or wash-room operated in said dairy ceiled or plastered or painted; that he bottles the milk by hand and not by machine; that he does not have in his milk shed and cow barn operated at said dairy any stationary hand-basins supplied with running water or connected with any sewer; that the floors of his dairy barns are not constructed of concrete or other impervious material, nor has the material of which said floors are constructed or the floors themselves been approved by the health officer of the City of Portland. Various other instances of noncompliance with the ordinance are avowed, including the fact that he does not possess a permit to take the milk into the city or offer it for sale there, nor has he obtained a license from the health officer for that

purpose. He says that the city officers threaten to enforce the ordinance against the plaintiff by arresting him and charging him with violation of the same in one or more particulars, in which he admits he has failed to obey the ordinance. He also urges that the ordinance is void in that it takes his property without due process of law, that it is arbitrary and unjustly discriminatory between persons in similar situations, that it vests arbitrary and unlimited power in the health officer, and is in conflict with the laws of the State of Oregon in requiring licenses and permits to sell milk in the city. He charges that all the requirements with which he has not complied are arbitrary and unreasonable, having no purpose except to make the business of dairying more burdensome to small producers of his class. He prays for an injunction against the enforcement of the ordinance except so far as it prescribes a standard for milk and provides for punishment for violation of that standard and that upon final hearing the injunction be made permanent. The Circuit Court sustained a general demurrer to the complaint, standing upon which and refusing further to plead, the plaintiffs suffered the dismissal of their bill and were cast in costs. They appealed.

After defining "milk," "butter-fat," "cream," and other forms of lacteal products, the ordinance proceeds to define "adulterated milk" and how adulteration may be accomplished. Notably, it is that produced from diseased cows, fed on improper food, drawn from dirty cows in unsanitary buildings by milkers whose clothes or hands are not clean, placed in contaminated receptacles, not covered to protect the same from outside contamination, and the like. Other terms are defined and Section 3 of the ordi-

nance prescribes that no person shall, within the city limits of the City of Portland, produce, sell, offer or expose for sale, or have in his possession with intent to sell, any milk or milk product which is adulterated within the meaning of the ordinance. Further on, the city law declares it to be unlawful to sell or offer for sale within the city for human food any milk or milk products without obtaining a license therefor from the health officer of Portland. Among other essentials in an application for a license must appear the name and residence of the applicant, whether he is the producer or not, the exact location of the dairy producing the milk, the number of cows in each herd, as well as other data. Upon filing the application, the health officer is required to cause an inspection of the dairy and herd to be made to ascertain if the same conform in all respects to the ordinance. Certain details of inspection are required and certain fees are exacted for a license to dispose of milk within the city. The health officer is required to inspect samples of milk from each milk producer-distributor once every six months. Various specifications are laid down relative to lighting, air space, floors, gutters, ceilings, walls and utensils. The requirements for cleanliness of buildings, cows, utensils and operators are quite numerous.

One of the principal contentions of the plaintiff is that the ordinance is an attempt to exercise extraterritorial power. A careful reading of the ordinance, however, despite its many specifications and requirements, discloses that the city does not undertake to exercise any authority outside of its municipal limits. As said by Mr. Justice BEAN in *Sterett & Oberle Packing Co. v. Portland,* 79 Or. 260, 269 (154 Pac. 410, 413):

" * * But in so far as the ordinance prohibits the sale within the city of the products of those places, unless the regulations have been complied with, it is enforceable, and a compliance with the regulations is exacted as a condition precedent to the selling of such products in the city."

Likewise, as declared in *Norfolk* v. *Flynn,* 62 L. R. A. 771, in Section 1 of the syllabus (101 Va. 473, 44 S. E. 717, 99 Am. St. Rep. 918):

"An ordinance requiring the inspection of milk sold within the limits of the city, and providing for the licensing of vendors, is not void as affecting persons beyond the limits of the municipality, where it only touches those who bring or send their milk into the city for sale."

1. All other things being equal, the city by virtue of the police power which has been conferred upon it by its charter may say to individuals who bring milk into the city for sale: "You will be required to operate with herds and appliances prescribed by the ordinance in the production of the milk which you bring into the city for sale to the inhabitants thereof and the city demands also the right to inspect for itself for the benefit of its people the plant which you are operating to ascertain if, indeed, the milk is produced by the processes required."

In *State* v. *Nelson,* 66 Minn. 166 (68 N. W. 1066, 61 Am. St. Rep. 399, 34 L. R. A. 318), Mr. Justice MITCHELL discussed this point, an extract from which was quoted approvingly by Mr. Justice KEITH in *Norfolk* v. *Flynn, supra,* using this language:

" * * The objection is that the provisions of the ordinance are not within the limits prescribed for it by the statute for the reason that it is attempted to make its operation extraterritorial in that it provides

for the inspection of dairies and dairy herds outside the city limits. There is no merit in this point. The manifest purpose of the statute under which this ordinance was passed was to enable the city council to adopt such reasonable police regulations as would prevent the sale of unwholesome milk within the city, and not merely to prevent the keeping of unhealthy dairy herds within the city limits. It is a matter of common knowledge that much of the milk sold in a city is produced in dairies situated outside the city limits. Any police regulations that did not provide means for insuring the wholesomeness of milk thus brought into the city for sale and consumption would furnish very inadequate protection to the lives and health of the citizens. It is also a matter of common knowledge as well as of proof in this case that the wholesomeness of milk cannot always be determined by an examination of the milk itself. To determine whether it does or does not contain the germs of any contagious or infectious disease it is necessary to inspect the animals which produce it. The inspection of dairies or dairy herds outside the city limits provided for by this ordinance applies only to those whose milk product it is proposed to sell in the city. The provisions of the ordinance in that regard go only so far as it is reasonably necessary to prevent the milk of diseased cows being sold within the city. This inspection is wholly voluntary on the part of the owner of the dairy or dairy herd. If he does not choose to submit to such inspection the result merely is that he or the one to whom he furnishes milk cannot obtain a license to sell milk within the city. The ordinance has no extraterritorial operation and there has been no attempt to give it any such effect. The only subject upon which it operates is the sale of milk within the city.''

But it is said that state legislation has taken away from the city the right to exercise the police power on that subject. By virtue of the charter of 1903,

enacted by the legislative assembly of the state and adopted by the legal voters of the city on a referendum to them during the same year, the council was empowered:

"To exercise within the limits of the City of Portland all the powers, commonly known as the police power, to the same extent as the State of Oregon has or could exercise said power within said limits." Sp. Laws 1903, § 73, subd. 1, p. 27.

Likewise, the same instrument empowered the council:

"To grant licenses, with the object of raising revenue or of regulation, or both, for any and all lawful acts, things, or purposes, and to fix, by ordinance, the amount to be paid therefor, and to provide for the revoking of the same." Ibid., subd. 21, p. 29.

By the Act of February 24, 1909, entitled: "An act to define and license and regulate peddlers and to provide a punishment for peddlers who peddle without a license and to repeal chapter 206 of 1905 Session Laws and all other acts and parts of acts in conflict herewith," the legislative assembly, after defining the term "peddler" and "peddling," inserted a proviso as follows:

" * * provided, however, that this act shall not apply to or include any peddling or selling of any agricultural or farm products, or nursery products. And provided further, that the provisions of this act shall not apply to any incorporated city or town which, by its charter, is vested with power or authority to license peddlers or hawkers or itinerant venders."

By the Act of February 26, 1925, entitled: "An act to amend section 8283, Oregon Laws, as amended by

chapter 21, General Laws of Oregon, 1923,'' the legis-
lative assembly, so far as it might lawfully do so,
added to the proviso so as to make it read thus:

" * * provided, however, that this act shall not
apply to nor include any peddling or selling of any
agricultural or farm products or nursery products
by the producer thereof or his employee; and provided
further, that the provisions of this act shall not apply
to any incorporated city or town which, by its
charter, is vested with power or authority to license
peddlers or hawkers or itinerant vendors, except that
no city or town shall require any license or impose
any fee or charge for the peddling or selling of any
agricultural or farm products produced from the soil
of the state of Oregon by the producer thereof, or
his employee, nor for the selling of nursery products.
Nothing contained in this act shall be deemed to
impair or restrain the right of any incorporated city
or town to enact and enforce reasonable regulations
without imposing licensing fees, to require purity and
wholesomeness in milk and other foods.''

2. The ordinance in question, so far as it requires
all persons selling milk within the city to comply with
the requirements of the ordinance and to obtain a
license before selling or vending milk within the city,
is a reasonable police protection and a proper exer-
cise of the police powers of the city.

3. The last sentence in the Act of February 26,
1925, is not embraced within the title of that act.
The original act of which the Act of February 25,
1925, is an amendment was passed by the legislative
session of 1909. The title reads as follows:

"An Act to define and license and regulate ped-
dlers and to provide a punishment for peddlers who
peddle without a license and to repeal Chapter 206 of
1905 Session Laws and all other acts and parts of

acts in conflict herewith.'' 1909 Laws of Oregon, 386.

Neither the amendment of 1923 nor of 1925 added anything to the title of the act. The scope of that act is limited to peddling. The last sentence in the act of 1925 is limited to regulations for the purpose of insuring purity and wholesomeness in milk and other food. The last sentence is not in any degree germane to the title of the act of which it is a part. For that reason it is a nullity because clearly in violation of Article IV, Section 20, of our Constitution. By the terms of that section the other portions of the act are not affected. Only the last sentence in the act is void: *State et al.* v. *Hawks,* 110 Or. 497, 508, 509 (222 Pac. 1071). The ordinance under consideration in the instant case does not treat of the matter of peddling. All of the provisions of that ordinance are incorporated therein for the purpose of insuring the purity of milk. The health of the citizens of Portland to a very large degree depends upon the purity of its milk.

4. The license fee in the ordinance under consideration is charged to cover the expense of inspection and issuance of licenses. No way has yet been found so well calculated to insure obedience to an ordinance of the nature under consideration as the right of inspection. Without that right and without thorough inspection the provisions of the ordinance would be inoperative. The state statute prohibiting exacting license fees for the sale by peddling of products from the soil does not prevent the City of Portland from levying a reasonable license to cover the expense of inspection. Such license fee is not levied for peddling. It is not provided for revenue primarily. It is a reasonable provision for the proper inspection

and regulation of the sale of milk within the city. Those who are selling milk are required to register and pay a license not because they are selling as peddlers but to insure the proper regulation for the protection of the inhabitants of the city: *Norfolk* v. *Flynn,* 101 Va. 473 (44 S. E. 717, 99 Am. St. Rep. 918, 62 L. R. A. 771). Such a license would be no protection to a peddler. A peddler's license would not authorize anyone to sell milk contrary to the ordinance assailed in this case. The statute of February 26, 1925, and the ordinance under consideration cover different fields of legislation.

5. Another contention is that the ordinance is void because it confers upon the health officer arbitrary and unregulated power. The plaintiffs maintain that there is no standard by which the health officer is controlled and that he may base his requirements on mere personal or fraternal grounds or his mere whim or caprice. The ordinance goes into great detail on the subjects of the requirements looking to the purity of milk offered for consumption within the city. It thus prescribes a standard of excellence. All that is left for the health officer is to ascertain the fact as to whether those requirements have been met. The principle is discussed at length in the case of *State* v. *Corvallis & Eastern R. Co.,* 59 Or. 450, 458 (117 Pac. 980), wherein Mr. Justice MOORE declared:

"The rule is universal that, as a legislative assembly exercises an authority conferred by the constitution, it cannot delegate the power to enact laws. It may, however, direct that the application of a statute to a designated district or to a specified state of facts shall depend upon the existence of certain conditions, to be ascertained and determined in a particular manner."

He also quotes from the opinion of Mr. Justice AGNEW, in *Locke's Appeal,* 72 Pa. 491, 498 (13 Am. Rep. 716), as follows:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

Finally, it is contended that the general statute relating to regulations made by the Dairy and Food Commissioner authorizing him to prescribe from time to time certain standards of food which must not be more rigorous than that prescribed by the Secretary of Agriculture under the United States regulations has superseded the power of the city and has withdrawn from it the police power to the extent of prescribing standards so that the ordinance is inert. It is not necessary to decide that question under the allegations of the bill. Not all of the police power has been withdrawn from the city and until a specific act of an attempt to usurp the power of the Dairy and Food Commissioner shall arise there is no cause for declaring the ordinance entirely void. There are many things, for instance, relating to the cleanliness of the plant and the health of the herds and the like, that are yet proper to be maintained. Merely because the ordinance may in one or two particulars conflict with the regulations of the Dairy and Food Commissioner, which, however, we do not decide, is no reason to strike down all of the wholesome legislation contained within its terms.

6. It follows that the ordinance attacked by defendants is a valid exercise of the police power of the City of Portland. Plaintiffs have not complied with the valid provisions contained in the ordinance. The decision sustaining the demurrer and dismissing the bill is correct and the decree of the Circuit Court is, therefore, affirmed.

AFFIRMED.   REHEARING DENIED.

ROSSMAN, J., did not participate in this decision.