# Hill, Appellant, *v.* Fetherolf.

*Municipalities—Cities of the third class—License—Milk inspection.*

1. A city of the third class has the power to enact an ordinance purporting, as its title shows, "to secure the wholesomeness and purity of milk, meat and meat products, by authorizing the inspection thereof, by providing for the licensing of persons dealing therein, by prohibiting the sale or offering for sale of milk, meat and meat food products which are impure, unwholesome or adulterated, or otherwise unfit for human consumption, by providing penalties for the enforcement of the same," and directing the appointment of a "meat and milk inspector," providing for the licensing of vendors upon payment of $10 per year. An ordinance of this nature is an exercise of the police power of the city, and cannot be considered in any way a trade regulation.

2. Such an ordinance may properly provide that no license shall issue to sell the milk of any dairy or herd wherever situated unless the owner thereof shall submit the dairy and herd to a proper inspection. The ordinance is not rendered void by the fact that it also provides for an inspection of places of persons holding a license where such places are in the city limits and within twenty miles of the city limits, and a revocation of such license, if the premises are found unsanitary, or if an inspection is refused to be allowed.

Argued Feb. 26, 1912.  Appeal, No. 189, Jan. T., 1912, by plaintiff from order of C. P. Berks Co., June T., 1911, No. 7, refusing petition for mandamus in case of Henry K. Hill v. George R. Fetherolf.  Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ.  Affirmed.

Petition for mandamus.  See Reading v. Miller, 45 Pa. Superior Ct. 28.

The title and material portion of the ordinance was as follows:

### AN ORDINANCE.

To secure the wholesomeness and purity of milk, meat and meat products, by authorizing the inspection thereof, by providing for the licensing of persons dealing therein, by prohibiting the sale or offering for sale of milk, meats and meat food products which are impure, unwholesome or adulterated, or otherwise unfit for human consumption, by providing penalties for the enforcement of the same.

Section 5.  It shall be the duty of the inspector to visit as often as may to him seem necessary in the city of Reading and within twenty miles of the city limits, the butchering shop and business places of all persons holding a license to sell meat or milk in the city of Reading, or where animals are slaughtered or meat or meat food products are prepared or stored, or where milk is kept, for the purpose of ascertaining whether such places are in a sanitary condition, and take samples for chemical analysis, and if found unsanitary, or if such person shall refuse to allow said inspector to examine said premises, then the inspector shall immediately certify said fact to the Board of Health, and after due notice to such licensee, and after a hearing before said Board of Health, said license may be revoked.

Section 6.  On and after the passage of this ordinance all dealers and vendors, and all persons who sell or offer for sale milk, meat and meat products in the

city of Reading, shall, upon order of the milk and meat inspector, after proper inspection as to the sanitary conditions, pay into the city treasury the sum of ten dollars ($10.00) and receive therefor a receipt, presentation of which at the office of the milk and meat inspector shall entitle him to a license; Provided, That all the provisions and requirements as contained in the following sections are complied with.

ENDLICH, P. J., filed the following opinion:

This case arises under an ordinance of the city of Reading approved fourth February, 1909, which was upheld in Reading v. Miller, 45 Pa. Superior Ct. 28. But whilst there the ordinance was attacked upon certiorari to the judgment of a magistrate inflicting its penalties, this proceeding is, in affirmance of its validity, to compel the issuing to the complainant of a license to sell milk under it. Relying upon it for the right he asserts and the duty he asks to have enforced, he is bound to bring himself within it by showing compliance on his part with its provisions. The utmost he can be permitted to do in the way of questioning any one of those is to show that it does apply to him, or that, applying to him, it imposes upon him a condition which cannot be lawfully imposed. In that event, conceding the general validity of the ordinance, he may be heard to contend that he is entitled to its benefits without conforming to the disputed provision. So circumscribed, this case presents, upon the pleadings as amended by agreement of counsel, the single inquiry whether the defendant, as Meat and Milk Inspector for the city of Reading, was justified in refusing to plaintiff the license he sought under the ordinance because the owner of the herd from which the milk came declined to permit a previous inspection of his herd and premises.

[In Sec. 3, the ordinance enjoins upon the inspector strict observance of the rules and regulations of the Board of Health. The answer sets forth and the de-

murrer necessarily admits: Com. v. Cullen, 13 Pa. 132, 143; Miller v. Canal Com'rs, 21 Pa. 23, 26; Com. v. Dickinson, 83 Pa. 458, 460; Getty v. Pa. Inst. for Instruction of Blind, 194 Pa. 571, 575, that those rules and regulations require, before issuance of a license to sell milk in the city, an inspection, by the inspector, of the herd producing the milk to be sold by the applicant and of the premises where such herd is kept,—and that they also require the application for the license to be made in the form in which it was in this case demanded. In addition, it is provided in Sec. 6 that the order of the inspector entitling an applicant to a license upon payment of the license fee shall be made after inspection.] (2)

Granted, as it must be, that the regulation of the sale of milk within its limits is among the lawful police powers of a city, there is no reasonable ground for doubting that an examination into the sanitary conditions of the herds and their surroundings is an essential part of it. Indeed, without that every other method of regulation must inevitably fall far short of accomplishing its main and legitimate purpose.

[But it is objected that, in so far as the inspection of herds and of the premises where they are kept is to be made beyond the territorial boundaries of the city, the latter has no authority to require it to be made, or to make it, through its officer.] (3) This contention is well answered in State v. Nelson, 66 Minn. 166 (68 N. W. Repr. 1066), (reaffirmed by the same court in State v. Elofson, 86 Minn. 103, 90 N. W. Repr. 309), where, under statutory authority to provide by ordinance for the inspection of milk and dairy herds within the limits of a city, the latter was held warranted in exacting that an applicant for a license to sell milk in the city consent to an inspection by the municipal officer of the herds yielding the milk to be sold though such herds be kept beyond the city limits. The language of the former decision so fully and exactly covers the question as it arises in this case that it may be here adopted

without attempting to add anything to it. Says the court:—

"The objection is that the provisions of the ordinance are not within the limits prescribed for it by the statute, for the reason that it is attempted to make its operation extraterritorial, in that it provides for the inspection of dairies and dairy herds outside the city limits. There is no merit in this point. The manifest purpose of the statute under which this ordinance was passed was to enable the city council to adopt such reasonable police regulations as would prevent the sale of unwholesome milk within the city. . . . It is a matter of common knowledge that much of the milk sold in a city is produced in dairies outside the city limits. Any police regulations that did not provide means for insuring the wholesomeness of milk thus brought into the city for sale and consumption would furnish very inadequate protection to the lives and health of the citizens. It is also a matter of common knowledge . . . that the wholesomeness of milk cannot always be determined by an examination of the milk itself. To determine whether it does or does not contain the germs of any contagious or infectious disease it is necessary to inspect the animals which produce it. The inspection of dairies or dairy herds outside the city limits provided for by this ordinance applies only to those whose milk product it is proposed to sell in the city. The provisions of the ordinance in that regard go only so far as it is reasonably necessary to prevent the milk of diseased cows being sold within the city. This inspection is wholly voluntary on the part of the owner of the dairy or dairy herd. If he does not choose to submit to such inspection, the result merely is that he or the one to whom he furnishes the milk cannot obtain a license to sell milk within the city. The ordinance has no extraterritorial operation, and there has been no attempt to give it any such effect. The only

subject on which it operates is the sale of milk within the city."

Logically this disposes also of the plaintiff's claim that in providing for the inspection of herds and premises beyond the city limits by the city's inspector the ordinance contravenes the declaration of Sec. 8, Act of May 25, 1907, P. L. 234, that "local meat inspectors shall have jurisdiction only within the limits of the city . . . by and for which they are appointed,"— even if that limitation, occurring in a statute exclusively relating to meat and meat food products, could be understood as applying to the defendant in his capacity as milk inspector, which, it would seem, it cannot.

It thus appears to be plain that under the ordinance of fourth February, 1909, an applicant for license to sell milk in the city of Reading must secure his supply from a person who is willing to submit to a previous inspection of his herd and premises, and that if he does not choose to do so the inspector, the defendant in this case, is not only justified in refusing the application, but forbidden to allow it.

[It may be added that this case properly presents no question under Sec. 5 of the ordinance, which, it is argued, discriminates between herd owners within or beyond twenty miles of the city in a manner conflicting with Sayre Boro. v. Phillips, 148 Pa. 482, and similar cases. Without stopping to note the obvious objections to this view, it is to be observed that the record does not disclose as a fact that the herd supplying the plaintiff is kept within twenty miles of the city. If not, the alleged discrimination cannot affect the plaintiff, and he has no standing to object to the ordinance on that ground, both because of the nature of this proceeding above pointed out and because of the principle laid down in Rothermel v. Meyerle, 136 Pa. 250.] (4) But apart from this, Section 5 does not provide for the inspection of herds and premises preliminary to the

granting of a license, (which is all we have to do with here,) but for recurring subsequent inspections of premises and a revocation of the license if they be found unsanitary or if permission to inspect them be refused. The point made by plaintiff with reference to the provisions of this section can become pertinent, if at all, only in a case where a license once granted is attempted to be revoked.] (5)

[And now, June 24, 1911, judgment is entered for the respondent that the peremptory mandamus be refused, and that the respondent have his costs.] (1)

*Errors assigned* were (1) the order of the court; (2, 3, 4 and 5) findings of fact as above.

*William Kerper Stevens*, for appellant.—The provision of Section 5 of the ordinance limiting the inspection to the city of Reading and within twenty miles of the city limits discriminates between persons who are engaged in the sale of milk, and is not a police, but a trade regulation, and is, therefore, void: Sayre Borough v. Phillips, 148 Pa. 482.

Section 5 of the ordinance is void in that it contravenes the express prohibition contained in Section 8 of the Act of May 25, 1907, P. L. 234.

*Henry P. Keiser*, City Solicitor, for appellee, cited, State v. Nelson, 66 Minn. 166 (66 N. W. Repr. 1066).

OPINION BY MR. JUSTICE ELKIN, April 15, 1912:

The questions involved in this case have been so fully considered in the opinion of the learned court below that little need be said here in disposing of this appeal. The validity of the ordinance in question was sustained in Reading v. Miller, 45 Pa. Superior Ct. 28, and we see no reason to disturb the conclusion reached in that case. It is contended for appellant that the ordinance

is in effect a trade regulation and not an exercise of
police power. This position was sufficiently answered
by the learned court below on the authority of State
v. Nelson, 66 Minn. 166; and State v. Elofson, 90 N. W.
Repr. 309. But it is argued that Section 5 of the ordi-
nance provides, as a condition precedent to the grant-
ing of the license, that the applicant must secure the
consents of the owners of herds and premises for the
purpose of inspection within twenty miles of the city of
Reading and need not secure such consents from persons
residing beyond the twenty-mile limit. The effect of
this limitation, it is urged, is either that no milk pur-
chased beyond the limit can be sold in the city, or that
such milk can be sold without an inspection; and, in
either event, the result would be unjust discrimination.
This construction would give the section under consid-
eration an effect not warranted by its language and not
intended by the municipal authorities. Section 5 im-
poses the duty of inspection upon the inspector and
does not relate to the licensing of applicants to sell
milk. It does not provide for the inspection of herds
and premises preliminary to the granting of the license;
but for the inspection after a license has been granted
and for a revocation of such licenses if the premises are
found to be unsanitary, or if permission to inspect be
refused. We therefore agree with the suggestion made
by the learned court below that these "provisions of this
section can become pertinent, if at all, only in a case
where a license once granted is attempted to be re-
voked." Then, again, the record here presented is bar-
ren of any facts upon which to raise the question of the
duty of the inspector to inspect either within or without
the twenty-mile limit. The duty of inspection generally
is entirely foreign to the question here involved, which
is the right of the inspector to refuse a license to ap-
pellant because he has not complied with the antece-
dent conditions upon which his application depends.
The licensing of dealers in and vendors of milk is pro-

vided for by Section 6 of the ordinance and is dependent upon the provisions and requirements of that and subsequent sections, and not upon the provisions of Section 5, which relate to the duties of the inspector after the license has been granted. We agree with the contention of the learned counsel for appellee that under the provisions of Section 6 all premises and herds are required to be inspected before the issuance of the license without reference to the twenty-mile limit. This applies to every owner of a herd who desires to sell milk in the city of Reading, regardless of the number of miles he may live from the city. The ordinance deals primarily with the sale of milk in the city and the inspection of herds is but incidental to this general purpose. The owners of herds cannot be compelled to submit to inspection, but the city can say that the milk cannot be sold within the city without such inspection. It is entirely voluntary on the part of owners whether they shall have their herds inspected or not, but when the milk is offered for sale in the city either by the owner, or by a dealer, it is the right of the city under its police power to say that such sale cannot be made until there has been a proper inspection, and that no dealer shall be licensed to sell milk from any herd no matter where located without such inspection. The law and the ordinance are based upon the power of municipalities to protect the health of the people by providing for the sale of pure milk, and such laws have been uniformly sustained by the courts. If an applicant can produce the written consent of a single owner to inspect his herd, and the inspection of that herd is satisfactory, he would be entitled to his license, but he could only sell milk from the herd thus inspected, and could not under a license thus granted sell milk from herds not inspected, nor from herds, the owners of which refused to give their consents to inspect.

Under the ordinance involved in this case all applicants are put upon the same basis and there is no such

discrimination as was pointed out in Sayre Boro. v. Phillips, 148 Pa. 482. That case and the line of cases relied on to sustain it have no application to the facts of the present case. In no proper legal sense can what was done in the case at bar be considered a trade regulation. Under the ordinance all dealers in or vendors of milk in the city are subjected to the same regulations and must submit to the same kind of inspection. There is no discrimination and all are required to obey the provisions of the law intended as a protection to the consumers of milk.

Judgment affirmed with costs.