## City of Quincy, Appellant, v. F. E. Burgdorf, Appellee.
### Gen. No. 7,780.

MUNICIPAL CORPORATIONS—*power of city to regulate peddling of milk within corporate limits.* A city has power under the Cities and Villages Act to regulate the sale of milk within its limits, notwithstanding the act of January 13, 1872, Cahill's Ill. St. ch. 5, ¶ 23, giving every farmer a right to sell the produce of his farm in any place or market, and to require that persons so selling milk obtain a license therefor, and to enforce such regulation by the imposition of a fine.

Appeal by plaintiff from the Circuit Court of Adams county; the Hon. FRED G. WOLFE, Judge, presiding. Heard in this court at the October term, 1924. Reversed and remanded. Opinion filed December 31, 1924.

C. H. WOOD, Corporation Counsel, for appellant.

J. LEROY ADAIR and WILSON & SCHMIEDESKAMP, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

Appellee was charged before a justice of Quincy in Adams county with having violated a municipal ordinance of the City of Quincy forbidding the peddling of milk in the city without first having obtained a license so to do as required by said ordinance. The case was first tried before the police magistrate of Quincy, and he found appellee guilty and assessed against him a fine of $5 and costs. From that judgment appellee appealed to the circuit court of Adams county, where on hearing he was found not guilty. From that judgment the City prosecutes this appeal.

Appellee resided on a farm outside of the corporate limits of Quincy. He kept a herd of cattle and took the milk produced therefrom and sold it in various parts of the city to the residents and inhabitants re-

siding on certain streets constituting his regular route for the sale of milk so produced to regular patrons and sold other such milk in small quantities at retail in the city. He refused to take out a license and pay the license fee of fifty cents required by the ordinance for peddlers of milk.

The ordinance is entitled: "An ordinance to provide for the inspection of milk sold within the City of Quincy and of dairies and dairy herds kept for the production of such milk, and to prevent fraud in the sale of milk, and to preserve the public health, and to license and regulate the sale and disposition of milk in said City." Material portions of the ordinance are:

"Section 1: No person, firm or corporation shall sell or offer for sale or deliver milk or cream within the City of Quincy, Illinois, without first having obtained a license so to do in the manner hereinafter provided.

"Section 2: Every person, firm or corporation desiring such license or to engage in the sale of or the delivery of milk or of cream in said City shall first make application therefor in writing to the Clerk of said City, which application shall set forth with reasonable exactness the name and place of residence of the applicant, the exact location or place from which the applicant obtains, or is to obtain his milk and cream, and if the applicant is not a producer of milk and cream, then the name of the person or persons, firm or corporation from whom he obtains or is to obtain his milk and cream for sale or distribution, and if said applicant is a producer of milk and cream, the number of cows in his dairy herd, or if he is not a producer of milk and cream, the number of cows in the dairy herd of the person or persons, firm or corporation from whom he obtains or is to obtain his milk and cream, and said application shall further set forth the manner in which the applicant intends to dispose of his milk, when licensed, according to the provisions of this Ordinance, and shall be signed and

sworn to by the applicant; and upon the payment of the license fee of fifty cents, the Clerk shall issue such license under which such person, firm or corporation may operate, subject to the Ordinances of the said city, now and hereafter in force and subject to the rules and regulations now and hereafter provided and laid down by the Board of Health regarding the sale and delivery of milk and cream, the sanitary conditions under which milk and cream shall be produced, stored and delivered, and the quality of such milk and cream.

"Section 3: Every applicant, and every person, firm or corporation from whom such applicant obtains or is to obtain milk and cream, shall permit the officers of the Board of Health of the City of Quincy, to inspect the dairy and dairy herd of such applicant, or the dairy herd and dairy of the person or persons, firm or corporation from whom the applicant obtains milk or cream together with all appliances and milk and cream vessels used therein, and any refusal upon the part of such applicant or upon the part of the person or persons, firm or corporation from whom such applicant obtains or is to obtain milk and cream, to permit the inspection above referred to shall be deemed a sufficient ground upon which to refuse the license applied for, and for like cause the Mayor upon the recommendation of the Commissioner of Health may revoke the same after its issuance."

"Section 7: No milk or cream which is watered, adulterated, reduced or changed in any respect by the addition of water or other substance or by the removal of cream and no milk which has been drawn from cows that are not free from all diseases dangerous to public health shall be brought into the City of Quincy or held, kept, sold or offered for sale at any place in said City, nor shall any person, persons or corporation keep, have, sell or offer for sale any such milk or cream in said City of Quincy."

Under section 7 are nine paragraphs defining adulterated milk and prescribing sanitary conditions, a failure to observe which forbids the sale of milk in the city.

"Section 10: Members of the Board of Health or its agents, their assistants and deputies shall have authority to stop and inspect or cause to be inspected any carriage, buggy, automobile, railway car, wagon, cart, or other vehicle used in delivering milk, and any store, depot, shop, creamery or other place where milk is offered for sale or sold, to take specimens thereof and subject them to satisfactory bacteriological and chemical analyses and other tests, and the results of such tests or analyses shall be recorded and preserved as evidence by the Board of Health and a certificate sworn to by the analysist shall be admissible in evidence in prosecutions under this ordinance."

"Section 15: Every licensee shall make immediate report to the Board of Health of all cases of disease on farms where dairy herds or dairies are located from which he obtains his milk or cream, or among the occupants or employees of such farm or dairy; and the Commissioner of Health is authorized to prevent the bringing of milk or cream from such farm or dairy into said City until the patient has recovered."

"Section 20: Any person, firm or corporation who shall sell or offer for sale or deliver any milk or cream within the City of Quincy without procuring a license therefor or who shall violate any of the terms or provisions of this ordinance or who shall fail, refuse or neglect to obey or conform to any of the directions herein contained, or in whose possession, care, custody or control any milk or cream shall be found which shall not comply with the terms of this ordinance, shall, upon conviction thereof be punished by a fine of not less than five dollars ($5.00) nor more than two hundred dollars ($200.00) for each offense."

The grounds or reasons for the decision of the circuit court do not appear in the record. It is contended by appellee, however, that the judgment is right because an act of the legislature entitled, "An Act for the protection of farmers, fruit growers, vine growers and gardeners," approved January 13, 1872 [Cahill's Ill. St. ch. 5, ¶ 23], gives to "every farmer, fruit

grower and gardener" an "undisputed right to sell produce of his farm, orchard, vineyard and garden in any place or market * * * without paying any State, county or city tax or license for so doing, any law, city or town ordinance to the contrary notwithstanding." On behalf of appellant it is contended that whatever might be a proper construction of the Farmers' Protection Act, it is foreign to the determination of the question presented by its appeal. In *City of Chicago v. Chicago & N. W. Ry. Co.*, 275 Ill. 30, the court held that in the interest of public health a municipality may regulate the kind of milk sold within its limits although indirectly affecting the production of milk on the farm outside the city limits.

To this contention we assent. The purpose of the license is not to restrain the vendor of milk from freely selling it. The fee of fifty cents per year imposed by the ordinance cannot be, and is not claimed to be, unreasonable in amount. The purpose of the fee requirement is not a revenue measure. Whether a resident or nonresident of the city, appellee could not legally be required to pay a sum, whether denominated a fee or a tax, unreasonable in amount and in excess of the actual cost of license and a reasonable fee for inspection in the promotion of public health and the general welfare. "When the legislature has authorized a city council to pass ordinances upon any subject, the power thus conferred must be reasonably exercised. Whether its exercise in a particular case is reasonable is a judicial question, and an unreasonable ordinance will be held void by the courts. The regulation of the sale of milk and its products is essential to the preservation of the public health, and authority for its regulation is clearly given to the city council by paragraphs 50, 53, 66 and 78 of section 1 of article V of the Cities and Villages Act. [Cahill's Ill. St. ch. 24, ¶ 65.] (*City of Chicago v. Bowman Dairy Co.*, 234 Ill. 294; *City of Chicago v. Union Ice*

*Cream Mfg. Co.,* 252 Ill. 311; *Gundling v. City of Chicago,* 176 Ill. 340).''

The foregoing is an excerpt from the opinion of Mr. Justice Dunn, speaking for the whole court in *Koy v. City of Chicago,* 263 Ill. 122 (127-8). The question before the court was the validity of a city ordinance imposing certain duties upon vendors of milk in the city, such duties conducing to the purity of the milk sold by them. The duties imposed were complained of as being an undue burden on the business in which Koy was engaged. It was further contended the apparatus required by the ordinance was unnecessary and of no benefit to complainant because he had pasteurizers and necessary equipment to secure the purity of the milk he sold. To that contention the court replied: ''The object of the ordinance is not to benefit persons engaged in the milk business or to enable them to comply with the ordinance in regard to pasteurizing milk, but is to make sure that the milk offered for sale within the city shall be of a quality which will not be detrimental to the public health. The city having power to require milk to be pasteurized is not limited to the imposition of a penalty for the violation of this requirement, but may prescribe the conditions under which the pasteurization shall be done in order to prevent an evasion of the ordinance and insure that the product shall be as pure as the ordinance requires.'' (p. 130.) Further enforcing the soundness of the fundamental doctrine of the police power the learned justice, by reference to a multitude of decided cases, defines the limitations of the exercise by municipalities of the power relating to the important article of milk. These decisions are not confined to the courts of this State (pp. 130-131). Sustaining the validity of the drastic ordinance then before the court, as a general principle applicable to all police regulations, he says: ''Courts cannot overrule the determination by the city council that a par-

ticular method of protecting the public health should be adopted unless it is so clearly and manifestly wrong there can be no doubt about it."

While the *Koy* case was one involving the validity of a city ordinance it presents with such fullness the principles applicable to the instant case, we deem it not amiss to present at length views there expressed. While the police power is vested in the State it has, as it is competent to do, transferred its exercise to its creatures, cities and villages. By article V, sec. 1, ¶ 50, they have power to regulate the sale of meats, certain other enumerated articles of food and "all other provisions." 53—"To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, flour, tobacco, meal and other provisions." 66—"To regulate the police of the city or village and pass and enforce all necessary police ordinances." 78—"To do all acts, make all regulations which may be necessary or expedient for the protection of health or the suppression of disease."

These clauses conferring power upon the city council are as they came from the General Assembly in 1872. The enumeration of articles of food, the regulation of the sale of which, and the provision for the inspection of which is made, is a history of the time. Articles now no longer sold are mentioned. Butter is a subject of regulation. Milk is not mentioned. But the vernacular of that day comprehended and comprised it under the general name of "other provisions." It was not then seen by the most prophetic, perhaps, that the production, transportation and sale of milk would fifty years hence be the most prominent subject of municipal regulation. The general terms conferring power inserted, no doubt, out of an abundance of caution, have become the chief subject of judicial interpretation and application. So construing and applying, in the *Koy* case, at page 130, it is said:

"The regulation of its sale is an imperative duty which has been universally recognized. This regulation in minute detail is essential, and extends from the health and keeping of the cows, which produce the milk, through all the processes of transportation, preservation and delivery to the consumer. Not only may laws and ordinances require that the milk offered for sale shall be pure, wholesome and free from the bacilli of any disease, but they may and do, in order to produce this result, prescribe the manner in which such purity, wholesomeness and freedom from disease shall be secured and made to appear." The principles of the *Koy* case are reinforced and applied in *City of Chicago v. Chicago & N. W. Ry. Co.*, 275 Ill. 30.

The ordinance under which appellee was prosecuted is replete with wholesome regulations the promotion of health and safety require. There is nothing in any law forbidding appellee the right to sell the produce of his farm. But there is much in it that requires him in the exercise of his undoubted right to comply with municipal regulations governing such sales if the sales are of milk. What avail to regulate the sale of milk in Quincy if one may bring it into the city with no regard to sanitary conditions and teeming with bacteria? If that could be done, who would produce milk in a city, subjecting himself to the restrictions modern sanitary science demands? Every one may do with his own as he will, but in contact with the members of the society in which he moves he must so use his own as not to injure others. The law under which appellee seeks to avoid compliance with the city ordinances has no application to his case. Even if that law had provided specifically he might unrestrainedly sell in cities the produce of his farm, including milk, he had and has no vested right not subject to be taken away if the public health and safety require. The object of requiring a license to make sales of milk is that he may be registered, his

place of production known and that the city authorities in the exercise of their power to protect and promote the public health and safety may inspect the premises, if they deem necessary or if an epidemic prevail. The defense is without merit and the contention of the city is unassailable.

The judgment of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*