No. 35,387

GEORGE DORSSOM et al., *Appellants*, v. THE CITY OF ATCHISON et al., *Appellees*.

(124 P. 2d 475)

Opinion filed April 11, 1942.

*J. W. Lowry,* of Atchison, argued the cause, and *Steadman Ball, W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope,* all of Atchison, were on the briefs for appellants.

*Karl W. Root,* of Atchison, argued the cause, and *Maurice P. O'Keefe,* of Atchison, was on the briefs for appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal involves the validity of parts of an ordinance of the city of Atchison.

The record discloses that in 1938 the city duly enacted an ordinance regulating the production and sale of milk which, among other things, made provisions for certain permits and for tuberculin tests of cattle, more particularly mentioned later. The plaintiffs are farmers living in Atchison county who are engaged in producing milk which is sold to distributors in the city of Atchison. In 1939 the plaintiffs complied with the provisions of the ordinance of which complaint is made, but did not do so in 1940 and 1941, and they are threatened with prosecution on that account. They instituted an action for a declaratory judgment to determine the validity of those parts of the ordinance. The city answered. The cause was submitted on a stipulation of facts, and the trial court upheld validity of the attacked portions of the ordinance. The plaintiffs appeal.

Two questions are presented:

(1) Does the city have authority to enact an ordinance which charges producers a permit or license fee? and—

(2) Does the ordinance require the producer to provide at his own expense a certificate that his cows have been tuberculin tested, and if so, does the city have authority to delegate its inspectional powers to third persons?

Without going into detail it may be said the ordinance deals comprehensively with the production and sale of milk within the city. Twenty-one words and terms used in the ordinance are defined, provisions are made for the permits hereafter specifically mentioned, also for labeling and placarding the containers in which the product is sold, for periodic inspection of dairy farms and milk plants, for the examination of the milk according to specified standards, for grading of the milk, for testing of cows, more specifically referred to hereafter, and generally for certain standards as to places of

production, sanitary conditions of plants and equipment used, methods and conditions of bottling, etc.

Referring to the particular portions of sections under attack, we note that section 3 of the ordinance makes it unlawful for any person who does not possess a permit from the health officer to bring into the city or offer for sale or to sell any milk product, provision being made for revocation of such permit under conditions not here material. It is then provided:

"The license fees which shall be required of and paid by all persons as herein above provided for shall be as follows:

"(a) Each milk producer producing milk which is sold or distributed or intended for sale or distribution within the corporate limits of the city of Atchison, Kansas, shall pay an annual permit fee of $2 for two cows or less and 50¢ per year for each additional cow. The payment of this fee shall include the right to distribute milk or milk products."

Appellants direct our attention to G. S. 1935, 12-1617, which reads:

"That the powers of the cities of the first, second and third classes within this state to impose license or occupation taxes upon peddlers and venders shall not be construed so as to apply to, or create the power to impose license taxes or occupation taxes upon producers and growers, or their agents or employees engaged in the sale of farm, or garden products, or fruits grown within this state."

It is contended that under it the city is forbidden to impose any license or occupation tax. Appellants cite decisions from other jurisdictions that milk is a farm product, and for our purposes that will be conceded. We think it is evident from the whole ordinance that whatever the permit or license fee imposed by the ordinance may be, it is not an occupation tax. The ordinance did not fix any fee as a means of producing revenue under any power of taxation. See *Duff v. Garden City*, 122 Kan. 390, 251 Pac. 1091, and *McKay v. City of Wichita*, 135 Kan. 678, 11 P. 2d 733. The question remains whether the fee imposed was a license fee within the purview of the above statute.

The sale of milk, cream and dairy products has been the subject of regulation by the state. See G. S. 1935, ch. 65, art. 7, and amendments in the 1941 supplement. The above statutes do not confer any specific powers upon cities to legislate with respect thereto. It is to be noted, however, that power has been granted to cities of the first class to make regulations to secure the public health (G. S. 1935, 13-436), to prevent the introduction and spread of contagion

(G. S. 1935, 13-415), and for such purposes to enact ordinances not repugnant to the laws of the state (G. S. 1935, 13-401). It may here be remarked there is no contention that the regulatory features of the ordinance are repugnant to the statute noted. Not only does the above statute recognize, but it is generally known, that it is necessary to the preservation of the public health that sources of food supply and especially milk be kept pure and of recognized quality. In connection with the performance of that duty the city has adopted regulations, the carrying out of which entails expense. It is rather clear from the entire ordinance that such fees as are charged are to defray that expense. Here there is no claim made that the fee is unreasonable, or that it is a device for revenue and not to meet expenses of inspection. It is also clear from the ordinance the fee is not fixed on the right of the producer to peddle or vend his milk; it is a measure calculated only to meet expense of determining that the product he sells complies with specified conditions to insure its fitness for human consumption. In our judgment the statute relied on by appellants was never intended to prevent enforcement of health regulations. Certainly one so regardless of consequences that he would peddle in the city meat from diseased animals raised by him, or decayed vegetables and fruits from his farm, could not successfully resist the efforts of the city to stop him by reliance on the statute exempting him from payment of occupation and license taxes. Other courts considering similar contentions have reached like conclusions. (*City of Norfolk v. Flynn,* 101 Va. 473, 44 S. E. 717, 99 Am. St. Rep. 918, 62 L. R. A. 771; *Korth v. Portland,* 123 Ore. 180, 261 Pac. 895, 58 A. L. R. 665; *Walton v. City of Toledo,* 3 Ohio Cir. Ct. Rep., n. s., 295, 13-23 Ohio C. C. 547 [affirmed without opinion, 69 Ohio St. 548, 70 N. E. 1134]; *City of Quincy v. Burgdorf,* 235 Ill. App. 560; *Carpenter v. City of Little Rock,* 101 Ark. 238, 142 S. W. 162.) In our judgment the section of the ordinance herein referred to is not to be stricken down on account of the grounds asserted.

Appellants also complain of item 1-r of section 7 of the ordinance, which need not be fully set forth. Under that item it is required that before milk is sold the herd shall, at least once every twelve months, be given a tuberculin test by a licensed veterinarian approved by the state livestock sanitary commission. The complaint is divided. It is contended that the ordinance does not specifically provide that the cost of making the test shall be borne by the owner

of the herd, and second, that the particular item of the ordinance delegates a delegated power contrary to law.

Although there had been legislation on the subject prior thereto, in 1911 the legislature passed a rather comprehensive law concerning the protection of domestic animals, the same being Laws 1911, chapter 312. It has since been amended in certain particulars and now appears as G. S. 1935, 47-610 to 47-635, inclusive. Under this act provision is made for protection of domestic animals from contagious and infectious diseases, and, among other things, the livestock sanitary commissioner shall, whenever he deems it necessary, formulate the rules under which the tuberculin test for tuberculosis in domestic animals shall be applied, and that no person other than one indicated for that purpose by the livestock sanitary commissioner shall inject any tuberculin into any animal in this state (47-631). The twenty-fourth section of the act as amended (47-633) provides that the governing body of any city shall have the power by ordinance to require the owner of any dairy herd offering for sale any milk within the city to first subject the cow from which the milk is derived to examination and test for tuberculosis, under the direction of and in accordance with the rules prescribed by the livestock sanitary commissioner.

It appears the city had power to require the herd be subjected to the tuberculin test and that compliance with the requirement is a condition precedent to the right to sell milk within the city. Possibly the city could have provided the tests could be made at its expense, but it did not do so. Its mere silence in not providing the cost should be paid by the applicant does not make that part of the ordinance bad. A fair interpretation of the ordinance is that the applicant must meet the conditions precedent at his own expense.

We cannot agree with appellants that the city has attempted to delegate a delegated power in providing that the tuberculin testing shall be by a licensed veterinarian approved by the livestock sanitary commission. It would appear from the statute above noted that such a person would be the only person authorized to make the test. This provision of the ordinance is in conformity with and not repugnant to the state law, and is a proper exercise of the city's legislative power under G. S. 1935, 13-401 *et seq.*

The present situation is very different from that considered in *Trimble v. City of Topeka,* 147 Kan. 111, 75 P. 2d 241, which is

relied on by the appellants. There it was held the ordinance attacked was repugnant to and inconsistent with the state law.

The judgment of the trial court upholding validity of section 3, subdivision (*a*) and of section 7, item 1-r, is affirmed.

HOCH, J., not participating.