# City of Newport et al. v. Hiland Dairy Co. et al.

June 16, 1942.

562

Carl H. Ebert, Walter J. Burke, and William J. Heringer for appellant.

Galvin, Tracy, Crawford, Geoghegan & Levy, and Barbour & Bassman for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

In February of this year, the City of Newport passed a milk control and regulation ordinance, generally referred to as the "Grade A" Milk Ordinance. The appellees, milk distributors in the City, instituted this proceeding early in March to test the validity of certain sections of the Ordinance and to enjoin the City from enforcing it. The trial court filed an "Opinion and Judgment Order" on April 20th, finally disposing of the case. Since there appears to be some difference of opinion as to the effect of the "Judgment Order," we will review it herein.

The Order sets forth: (1) That the City, under the exercise of its police power, possesses the right and authority to compel the production and distribution of milk meeting Grade "A" requirements; (2) the extraterritorial inspection of producers located beyond the territorial limits of the City is valid; and (3) the section providing for reciprocity affecting nonresident plant operators and local plant operators coming within the terms of the section does not discriminate against Newport distributors. The Order next treats Section 3(b) of the Ordinance which provides for the manner of assessing fees against distributors for the costs of inspecting their plants, as well as the plants of producers. It was the opinion of the trial court, since the inspection of producer plants would require about 80 per cent of the inspection services, and there being practically no difference in the amount of time required to inspect distribution plants, irrespective of size, "* * * that the division of the cost of such inspections, based on the quantum of service rendered to operators and producers respectively, would be equal, just, fair, and conducive of proper control and regulation." The trial court, being of the further opinion that the producer or dairy owner is benefited under the Ordinance, as well as the distributor, thought the placing of all of the inspection fees on

the distributors violated the rule that fees must be reasonable and represent to a fair degree the cost of services rendered. The trial court indicated also that a revision of the Ordinance consistent with his views would be valid and could be put into effect by the distributors deducting from the remittances (for milk) made to the producers. It was suggested also that such an arrangement would relieve the distributors of the responsibility of the producers' compliance with the Ordinance, thereby making them, as well as the distributors, directly and personally amenable to its regulations. The Order then sets forth that Section 3(b) "* * * is an unreasonable and arbitrary exercise of legislative power inimical to plaintiff's constitutional rights, and that said section must be held invalid." The City was then enjoined from enforcing or in any manner attempting to enforce against the distributors involved in the litigation the provisions of Section 3(b) of the Ordinance, and "* * * or interfering in any manner whatsoever with the plaintiffs' right to sell milk in the City of Newport, Kentucky." We construe this "Opinion and Judgment Order" to mean that the trial court upheld every phase of the Ordinance, with the exception of Section 3(b). It is interesting to note in passing that, even though the trial court expressed the view that the fees ought to fall on producers as well as distributors in relation to the cost of services rendered, he had no hesitancy in suggesting that the City could require the distributors to collect the producers' fees for it by withholding them from the monthly remittances to the producers.

Only the City is appealing. We are not concerned, therefore, with any questions save those involving Section 3(b) of the Ordinance, notwithstanding the fact that a good part of the briefs of both sides are devoted to other questions.

Section 3(b) follows:

"Inspection Fees

"The permit provided for herein shall not be issued unless an inspection has been made by the Health Officer and inspection fees therefor paid to the City of Newport, Kentucky, by the person holding or applying for said permit. Said inspection fees shall not be construed as a tax and are deemed to be consistent with the fair and reasonable value of the services rendered and to be rendered by the

Health Officer to the permit holder in the enforcement of the provisions of this ordinance by regular inspections, tests, analyses, and any and all pertinent services. Said fees shall be paid monthly to the City of Newport, Kentucky, on or before the 10th day of each month hereafter, and same shall be based upon the actual net weight of all milk and milk products received or produced. The original weight sheets shall be made available to the Health Officer once each month for the determination of said fees.

"The owner or operator of a milk plant whose milk and milk products are sold, delivered for sale, offered for sale, given away, stored, or distributed in the City of Newport, Kentucky, shall pay an inspection fee of four (4c) cents per hundred weight for all milk and milk products received or produced at said milk plant, except sweet cream purchased as such for market milk purposes, in which case the fee shall be one (1c) cent per pound butterfat.

"Payment of the inspection fee herein provided shall entitle the owner or operator of said milk plant to regular inspections as herein provided, which shall include systematic and regular inspections of the premises and equipment of all milk producers who supply milk or milk products to said milk plant for determination of Grade. The names and locations of all such milk producers shall be registered with the Health Officer. All new producers shall be registered at least 7 days before milk is to be received in order that the grade may be determined.

"The holder of a permit, when informed by the Health Officer of the breach of any of the requirements of this ordinance by a producer or producers, who supply milk or milk products to his milk plant, shall forthwith exclude such milk or milk products from his milk plant, and shall not accept same thereafter until permission so to do is received in writing from the Health Officer.

"The entirety of the inspection fees paid to the City of Newport shall be used solely and exclusively for the inspections and various services rendered to the permit holder by the City of Newport, under the terms and provisions of this ordinance, and for no other purpose whatsoever. Said fees are deemed to

be and are consistent with the actual value of the services rendered to the permit holder by the City of Newport, and no more."

It is conceded that a municipality may regulate and control the sale of milk within its limits, provided the regulations are reasonable and not discriminatory. We have no case in point, and, so far as we have been able to determine, an inspection fee exactly like the one involved in this case has not been passed upon. The cases of State v. Nelson, 66 Minn. 166, 68 N. W. 1066, 34 L. R. A. 318, 61 Am. St. Rep. 399; City of Norfolk v. Flynn, 101 Va. 473, 44 S. E. 717, 62 L. R. A. 771, 99 Am. St. Rep. 918; Hill v. Fetherolf, 236 Pa. 70, 84 A. 677; People ex rel. Ogden v. McGowan, 118 Misc. 828, 195 N. Y. S. 286; Korth v. City of Portland, 123 Or. 180, 261 P. 895, 58 A. L. R. 665; Pure Milk P. & D. Ass'ns v. Morton, 276 Ky. 736, 125 S. W. (2d) 216, and others cited therein, adequately set forth the reasons for upholding city ordinances licensing those who sell milk within their limits. The foreign cases also treat the right of cities to prohibit the sale of milk within their borders which does not meet reasonable standards, and to make inspections of the plants of producers as well as distributors to see that their standards are met. One who produces his own milk and desires to sell it in a city can be required to obtain a license before so doing and also to submit to an inspection of his plant. One who produces no milk of his own, but operates only as a distributor in a city, can be required to obtain a license to carry on his business and also to obtain his milk from only those producers who are willing to meet the standards laid down by the city and to submit to inspections of their plants.

Most of the aforementioned cases involved questions raised by producers or distributors located beyond city limits. However, it was held in the case of Hill v. Fetherolf, supra, that the city milk inspector was justified in refusing a distributor a license for which he was required to pay a fee of $10 because the owner of the herd from which he obtained his milk declined to permit an inspection of his herd and premises. All of the cases show that milk ordinances are based upon the power of municipalities to protect the health of their inhabitants by providing for the sale of pure milk, and the Hill case clearly sets forth that the fundamental question involved is the right to sell milk within the city, the inspection of

herds being only incidental to the main purpose. Whether the producers within the Newport milk shed will submit to inspections by the City under the Ordinance in question is entirely up to them. If they do not, their milk can not be sold within the City. If they do, it may be; but, as just indicated, the purpose back of the Ordinance is the sale of pure milk in Newport and it is directed primarily at those who seek to distribute milk therein. The distributors are the ones benefited mainly by the Ordinance, because, if they are unwilling to obtain a license and to sell the character of milk provided in the Ordinance, they will be denied the privilege of doing business in the City. This disposes of the question, therefore, as to the right of the City to impose an inspection fee upon the distributors which will be adequate to inspect their plants, as well as the plants of the producers from which they purchase milk.

An examination of the Ordinance shows that it is based upon the volume of milk coming into the plant of the distributor and not upon the volume of milk sold in the City. At first blush this may seem unfair, but when we consider that the milk handled by all distributors, whether gathered in their own vehicles or purchased at their doors from producers, is so mixed and commingled that it would be impossible to trace the product of any one producer, the necessity for inspecting all of it is apparent. Should impure milk from only one herd reach the plant of a distributor, it would, or could, contaminate his whole supply. Furthermore, the duties of the inspector would be the same, regardless of the amount of milk a distributor might sell within the City. For example, if Distributor A gathers milk from 20 farms, but sells only 10 per cent of it in the City, it would still be the duty of the inspector to inspect all of the 20 producing plants, as well as the plant of the distributor. Unless proper facilities were established, there would be no way of segregating milk going to consumers in the City, so we must conclude that the levying of a flat fee on the volume of raw milk coming into the plant is not an unreasonable or arbitrary act on the part of the City.

There is next the question as to whether the levying of the fees just mentioned is unreasonable and arbitrary as between distributors. For example, a small distributor will pay a very small fee, while a large one, even though the major part of his milk may be sold in places

other than the City, will be required to pay a much larger fee. The levy is upon a class and it involves the volume of business done or, at least, the possibilities for business. Such a plan seems reasonable to us. Because of the unusual character of the commodity under consideration and the possibility of a very small amount of impure milk contaminating a large amount of it, we fail to see how one can seriously contend that the levying of the fee on the basis of the volume of milk coming into the plant is arbitrary. If the large distributor who sells the major portion of his milk in places other than the City of Newport so desires, he may arrange his facilities for handling separately that part of his milk sold to the inhabitants of Newport. But, in any event, it is not likely that the incidence of the inspection fee involved herein will be upon the distributors. This fee may be passed back to the producers through a reduction in the amount paid for milk, but it is more than likely that it, like most other fees and taxes, will eventually fall upon the consuming public.

There remains the question as to whether the fees will produce an amount in excess of that necessary to carry out the purposes of the Ordinance. If this condition should arise, it can be readily adjusted, since the Ordinance clearly sets forth that it is the intent of the City to collect only an amount sufficient to effectuate the Ordinance.

Judgment reversed with directions to set it aside and to enter a judgment in conformity with this opinion.

Whole Court sitting, except Judge Ratliff.