EARL FELT, appellant, v. CITY OF DES MOINES and ABRAHAM GELPERIN, director of public health, appellees; J. J. VAN DRESER, mayor, ALLAN DENNY et al., members of city council, and LEONARD G. HOWELL, city manager, added appellees.

No. 48974.

(Reported in 78 N.W.2d 857)

OCTOBER 16, 1956.

Holliday, Miller, Myers & Stewart and James M. Stewart, all of Des Moines, for appellant.

Wade Clarke, Cloid I. Level and Leo Ballard, all of Des Moines, for appellees.

PETERSON, J.—There is only one question in this case: whether or not City of Des Moines by ordinance exceeded its authority in establishing an inspection fee of one cent for each one hundred weight of fluid milk sold in Des Moines by producers residing outside the city.

Plaintiff lives in Dallas County and is a producer of Grade A milk for the Des Moines market. He is a member of an association known as Des Moines Cooperative Dairy, which is composed of about 1200 members who are dairy farmers living in several counties in and around Polk County and who sell their milk in the Des Moines milk market. During the year from April 30, 1953, to April 30, 1954, there was delivered by these milk producers a total of 108,167,994 pounds of milk to dealers in Des Moines and on the basis of the inspection fee fixed by ordinance the producers paid $10,816.79 in fees. Of this total plaintiff paid $28.67. It is this inspection fee to which he objects on his own behalf, and presumably on behalf of his fellow members in the association. The total cost of milk inspection in the City of Des Moines for the year 1953 was $34,752. Of this amount the members of the cooperative paid the sum as above stated and the city collected other inspection fees not involved herein, making a total inspection fee collection of $18,428. The balance of the cost of maintenance of milk inspection in the Department of Public Health of Des Moines for the year was a part of the regular city budget and was paid through taxation as against citizens of Des Moines. Upon trial of the case in the District Court plaintiff was denied relief against the City, from which decree he appeals.

Section 366.1, Code of Iowa 1954, provides: "Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, *preserve the health,* promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days." (Emphasis ours.)

Section 368.25, adopted in 1951 by the Fifty-fourth General Assembly, provides: "Milk inspection. They [municipalities] shall have power to provide for the inspection of all milk or milk products sold for human consumption within the corporate limits, and to compel the tuberculin and other tests by an accredited veterinarian for dairy cattle supplying such milk. They may provide for the pasteurization and sanitary handling of milk and milk products sold for human consumption. However, nothing in this section shall be construed as giving municipal corporations power to provide regulations or standards in conflict with state law."

The Fifty-sixth General Assembly (chapter 110, section 2) amended section 368.25 by striking the two words "state law" therefrom. In lieu thereof they added the following words: "United States Public Health Service Recommended Milk Ordinance and Code, 1953 Edition".

On April 11, 1953, Des Moines enacted a new milk ordinance. Section 55-4 provides in part: "Each milk producer outside the City of Des Moines furnishing milk * * * to milk distributors or plants located within the City of Des Moines shall pay to the City of Des Moines an inspection fee of one cent for each hundred weight of fluid milk sold by such producer for ultimate use or resale as fluid milk."

The ordinance also provides: "It shall be unlawful for any person to bring into, send into, or receive in the City of Des Moines, Iowa, or its police jurisdiction, for sale * * * any milk * * * who does not possess a permit from the health officer of

the City of Des Moines, Iowa. Every milk producer * * * shall secure such a permit. Only a person who complies with the requirements of this chapter shall be entitled to receive and retain such permit."

Appellant, in substance, urges two grounds for reversal: 1. Section 368.25 has not specifically conferred upon the City of Des Moines the right to include in its ordinance a provision with reference to payment of inspection fee by milk producers living outside the city. 2. In connection with statutory construction if there is doubt or ambiguity in the language of a statute, legislative history concerning its enactment may be considered. From the history as to enactment of section 368.25, the legislature did not intend to confer power upon municipalities to provide an inspection fee.

I. As milk forms an important part of human diet, and contamination thereof by bacteria involves hazards of illness, pestilence and infection, its production, processing and sale are subject to regulation by statute and ordinance for the public welfare. Milk ordinances are based on the power of municipalities to protect the health of their inhabitants by providing for the sale of pure milk. The earlier cases with reference to this question pertained only to the authority of cities to inspect dairies, located outside the city, and supplying milk to the inhabitants of the city. In early years the question of charging an inspection fee was not a part of the program. State v. Nelson, 66 Minn. 166, 169, 170, 68 N.W. 1066, 1067, 34 L.R.A. 318, 61 Am. St. Rep. 399; annotation 14 A.L. R.2d, page 105. The pioneer case with reference to authority of a city to inspect dairies located outside the city is the Minnesota case of State v. Nelson (1896) supra. The decision makes a careful analysis of the fact that cities may inspect extraterritorially:

"The objection is that the provisions of the ordinance are not within the limits prescribed for it by the statute, for the reason that it is attempted to make its operation extraterritorial, in that it provides for the inspection of dairies and dairy herds outside the city limits. There is no merit in this point.

"The manifest purpose of the statute under which this ordinance was passed was to enable the city council to adopt

such reasonable police regulations as would prevent the sale of unwholesome milk within the city, and not merely to prevent the keeping of unhealthy dairy herds within the city limits. It is a matter of common knowledge that much of the milk sold in a city is produced in dairies situated outside the city limits. * * * This inspection is wholly voluntary on part of the owner of the dairy or dairy herd. If he does not choose to submit to such inspection, the result merely is that he or the one to whom he furnishes milk cannot obtain a license to sell milk within the city. The ordinance has no extraterritorial operation, and there has been no attempt to give it any such effect. The only subject upon which it operates is the sale of milk within the city."

█ As the population of our cities has increased, and inspection has become more vital, the question of requiring producers to pay a part of the cost of inspection has developed, to assist in securing a pure milk supply for the inhabitants of our cities and towns. There is no specific provision in section 368.25 granting authority to municipalities to provide that an inspection fee be charged against the producer of milk. The question herein is whether such power exists as incidental to administration of milk inspection. This court has never passed directly on the question. The great weight of modern authority supports the provision, and it is our position that when the inspection fee is not in the nature of a revenue act, but is for the purpose of partly or wholly meeting the expenses of inspection, the provision becomes a proper incident to the authority granted under the statute. Ridgeway v. Bessemer (1914) 9 Ala. App. 470, 64 So. 189; Chicago v. Chicago & Northwestern Ry. Co., 275 Ill. 30, 113 N.E. 849, L. R. A. 1917C 238; Quincy v. Burgdorf (1924) 235 Ill. App. 560; Koy v. Chicago, 263 Ill. 122, 104 N.E. 1104, Ann. Cas. 1915C 67; Pure Milk Producers & Distributors Assn. v. Morton (1939) 276 Ky. 736, 125 S.W.2d 216; City of Newport v. Hiland Dairy Co. (1942) 291 Ky. 561, 164 S.W.2d 818; Norfolk v. Flynn (1903) 101 Va. 473, 44 S.E. 717, 62 L.R.A. 771, 99 Am. St. Rep. 918; Rossman v City of Moultrie (1940) 189 Ga. 681, 7 S.E.2d 270; Korth v. City of Portland (1927) 123 Ore. 180, 261 P. 895, 58 A. L. R. 665; Hill v. Fetherolf, 236 Pa. 70, 84 A. 677; Prudential Co-op. Realty Co. v. Youngs-

1274

town, 118 Ohio St. 204, 160 N.E. 695; Des Moines v. Fowler, 218 Iowa 504, 255 N.W. 880; Pella v. Fowler, 215 Iowa 90, 244 N.W. 734; United States v. Jones, 204 F.2d 745.

In 14 A. L. R.2d at page 114 it is stated: "An ordinance imposing a license tax on dairymen owning twenty cows or less of one dollar for each cow, and dairymen owning over twenty cows of 50 cents for each cow was held in Ridgeway v. Bessemer, 9 Ala. App. 470, 64 So. 189, to be valid and applicable to one confessedly doing a dairy business in the city, although he lived and kept his cows outside the corporate limits of the city, the court taking the view that the tax imposed by the ordinance was not a property tax, but was clearly a license tax on the occupation of dairymen carrying on or doing business within the city."

In the Kansas case of Dorssom v. City of Atchison, 155 Kan. 225, 228, 124 P.2d 475, 477, the court stated: "Not only does the above statute recognize, but it is generally known, that it is necessary to the preservation of the public health that sources of food supply and especially milk be kept pure and of recognized quality. In connection with the performance of that duty the city has adopted regulations, the carrying out of which entails expense. It is rather clear from the entire ordinance that such fees as are charged are to defray that expense."

It is also stated in 14 A. L. R.2d, page 115: " * * * the court in Quincy v. Burgdorf, 235 Ill. App. 560, sustained a municipal ordinance making it unlawful for any person to deliver milk or cream within the municipality without first having obtained a license to do so in the manner provided therein, as applied to a farmer residing outside the corporate limits of the municipality and keeping a herd of cattle and taking the milk produced thereby to the city and selling it there to residents thereof at retail * * * the theory of the decision being that the purpose of the license ordinance was not to restrain the vendor of milk from freely selling it, that the fee of 50 cents per year imposed thereby was not an unreasonable amount and was not a revenue measure, that the purpose of the ordinance was to make sure that the milk offered for sale was of a quality which would not be detrimental to the public health."

In 14 A. L. R.2d at page 116 appears an analysis of a Kentucky case: "That city ordinances licensing those who sell milk within the city, produced or processed outside the city limits, are to be sustained, and that cities may prohibit the sale of such milk within their borders which does not meet reasonable standards and may make inspections of the plants of producers as well as distributors to see that their standards are met, was indicated in the Newport v. Hiland Dairy Co., 291 Ky. 561, 164 S.W.2d 818, the theory being that such milk ordinances are based upon the power of municipalities to protect the health of their inhabitants by providing for the sale of pure milk. The court concluded that whether the outside producers of milk would submit to inspection by the city under the provisions of the ordinance was a question entirely up to them; that if they did not, their milk could not be sold within the city; that the ordinance was primarily directed against the sale of milk in the city by those who sought to distribute it therein; and that the city had the right to impose an inspection fee upon the distributors which would be adequate to inspect their plants as well as the plants of the producers from which they purchased the milk."

In case of Prudential Co-op. Realty Co. v. Youngstown, supra, the court stated at page 214 of 118 Ohio St., page 698 of 160 N.E.: "It is not necessary that the statute should specifically give to the municipality power to charge and collect a fee to cover the cost of inspection and regulation. Where the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied."

The Iowa case of Des Moines v. Fowler, supra, involved a former milk ordinance. It does not have reference to an inspection fee, but has some significant language applicable herein, at page 509 of 218 Iowa, page 882 of 255 N.W., as follows: "We think it must be conceded, however, that in conferring upon cities the power by ordinance to provide for the matters which the statute enumerated, it was intended that the cities could provide in such ordinances for all such requirements as were reasonably necessary for carrying out their purposes. It would be a useless and an impotent gesture to confer upon cities the power

to enact such ordinances if such cities could not exercise the power to enforce the ordinances thus enacted. *We think that the inspection and regulations which it was intended by the statute that cities should exercise would reasonably and necessarily imply the creation of the machinery and procedure for carrying them into effect."* (Emphasis ours.)

In case of Pella v. Fowler, supra, we stated at page 98 of 215 Iowa, page 738 of 244 N.W.: "Cities and towns in this state have both statutory and police power to exact license fees to be limited to the reasonable cost of enforcing the same."

The United States Court of Appeals Seventh Circuit case of United States v. Jones, supra, is a criminal case in which some significant language with reference to powers under a statute is used (204 F.2d at page 754): "Consequently that which is implied in a statute is as much a part of it as that which is expressed, for a statutory grant of a power carries with it, by implication, everything necessary to carry out the power and make it effectual and complete."

▮▮▮ II. Senate File 163 as originally introduced in the Fifty-fourth General Assembly was offered in evidence by plaintiff, over objection. It changed the old section 368.10 by leaving out the word "production" in the sentence "establish and enforce sanitary requirements for the *production,* handling and distribution of milk." Section 3 of said Senate File is a general provision with reference to "ordinances regulating established. places of business and the operation thereof within the limits of the corporation." One provision is the ordinance "may fix license fees in an amount sufficient to defray the cost of inspection and licensing." Section 3 was stricken from the bill before final passage. Appellant contends that because of these two changes an intention is shown on the part of the Legislature not to grant power to the city to enact an inspection fee in its ordinance. This contention is not sound. Omission of word "production" has no significance. In the new section 368.25 the legislature stated: "They shall have power to provide for the inspection of all milk or milk products sold for human consumption within the corporate limits * * *." This language includes inspection of production * * * of milk * * *. The Act of the legislature as finally adopted is not ambiguous. It needs no historical background to

aid in its construction. In the absence of ambiguity specific matters concerning the history of the Act in its passage through the legislature are not competent and material and, therefore, not admissible. No judicial interpretation is needed to explain the meaning of section 368.25. The question is whether under its provisions power is granted to a municipality to establish and collect an inspection fee. We hold such power is granted as a proper detail of administration. 82 C.J.S., Statutes, section 355, page 746; idem, section 356, page 753; 50 Am. Jur., Statutes, section 326; Tennant v. Kuhlemeier, 142 Iowa 241, 120 N.W. 689, 19 Ann. Cas. 1026.

In 82 C.J.S., Statutes, section 355, page 751, we find the following general statement: "In any event, as a general rule, the plain meaning of a statute cannot be affected by resort to its history, legislative or otherwise."

With reference to amendments the following statement appears in 82 C.J.S., Statutes, section 355, page 752: "Under the general rule, amendments or modifications, and changes in the frame of the bill during its passage, and the action of the legislature on amendments offered may be considered if the language of the statute is ambiguous, but not if its meaning is plain. The mere introduction of an amendment has no probative value. * * * but the fact that a bill as originally drafted contained language which was omitted from the final draft does not of necessity mean that the intent of the omitted portion was not still embodied in the bill as passed."

In Tennant v. Kuhlemeier, supra, at page 245 of 142 Iowa, page 690 of 120 N.W., we said: "Moreover, it is generally held that the legislative history of an act is inadmissible. [Cases cited.] The Code Commission was nothing more than the draughtsman of the act, and its intent, although perhaps admissible, will not control over the bills as finally adopted by the Legislature."

III. The statute grants authority to cities to provide by ordinance for wholesome milk. This means that cities can adopt such requirements as are necessary to carry out this purpose. Otherwise the legislative enactment would be of no value. This implies regulation concerning sanitation of every nature: testing of milk; testing of cows; rules concerning sanitary con-

ditions where cows are kept, and the handling of the milk; inspection as to all these matters. All this involves expense. A provision that the producer be required to pay part of the expense is as much an implied power under the statute as all other details concerning methods of producing wholesome milk. Des Moines has a complete and splendid milk ordinance. It has careful and proper administration, in part made possible through collection of the inspection fees approved in this decision. As a result the citizens of Des Moines are receiving especially good milk. Grade A milk is such as tests 90% or better. The over-all rating of Des Moines milk is 95.17%.

The decree of the district court is affirmed.—Affirmed.

THOMPSON, C. J., and BLISS, GARFIELD, HAYS, OLIVER, SMITH, and WENNERSTRUM, JJ., concur.

LARSON, J., dissents.

LARSON, J. (dissenting)—I respectfully dissent.

I am greatly disturbed about this case. In Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N.W. 324, 27 L. R. A., N.S., 1150, cited with approval in Des Moines v. Fowler, 218 Iowa 504, 507, 255 N.W. 880, 881, the rule is stated:

" 'The universal rule, not only for this state but everywhere, is that: "Municipal corporations can exercise such powers only as are expressly granted, and such implied ones as are necessary to make available the powers expressly conferred and essential to effectuate the purposes of the corporation, and these powers are strictly construed." Or, as stated in other cases, cities of this state have these powers: First, those granted by the Legislature in express words; second, those necessarily or fairly implied or incident to the powers expressly conferred; and, third, those essential to the declared objects and purposes of the corporation —not simply convenient, but indispensable.' "

I firmly believe this rule may even be stronger when the power to tax is attempted by implication. This is a good rule and should be reaffirmed. I am also firmly convinced this license fee cannot be termed "indispensable."