No. 42,211

SUNFLOWER TIP TOP DAIRIES Co., *Appellant*, v. CITY OF RUSSELL, a Municipal Corporation, *Appellee.*

(362 P. 2d 76)

Opinion filed May 18, 1961.

R. H. *Royer* of Abilene argued the cause, and *Paul H. Royer* and *James C. Johnson*, both of Abilene, and *Marvin E. Thompson, G. W. Holland*, and *Clifford R. Holland, Jr.*, all of Russell, were with him on the briefs for the appellant.

*Harold W. McCombe* of Russell argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: As of the effective date of September 15, 1959, the City of Russell amended its then ordinance governing the sale of milk within the city. The principal change in the ordinance was the imposition of permit fees upon milk producers, haulers, and operators of milk plants or wholesale distributors. After certain inquiries made at the time the amended ordinance became effective, the Sunflower Tip Top Dairies Company filed a suit against the city for a declaratory judgment and further seeking injunctive relief claiming that the amended ordinance was unreasonable and unconstitutional. The matter was tried to the district court, and that court made findings of fact and conclusions of law and decided in effect that plaintiff had failed to show that the ordinance was invalid. Plaintiff promptly appealed to this court.

For the sake of brevity, we shall refer to the parties as plaintiff and defendant.

The plaintiff is a co-operative marketing association organized and existing under the pertinent laws of this state. Plaintiff's principal place of business is at Hillsboro. One of the plaintiff's milk plants is also located at Hillsboro, and it is there plaintiff processes grade A milk. A varying number of milk producers sell their milk through the Hillsboro plant. The evidence would indicate that such producers would number between 125 to 160, and an exhibit dated January 28, 1960, indicates that, at that time, the producers selling milk through the plaintiff's plant owned some 3,829 cows.

It is clearly shown that prior to the enactment of the amended milk ordinance by defendant city, plaintiff had supplied grade A milk and other dairy products from its Hillsboro plant to one IGA store in the city of Russell. Evidence shows that only three-tenths of one percent of the plaintiff's milk of Grade A quality was sold in the city of Russell.

The district court's findings 10 and 11 give a concise and accurate history of the milk ordinances of the defendant city as follows:

"(10) That on May 29, 1956, the Governing Body of the City of Russell, Kansas, enacted Ordinance No. 893, which adopted by reference Milk Ordinance and Code-1953 Recommendations of the Public Health Service. This code required every milk producer, milk hauler, milk distributor and operator of a milk plant to secure a permit and provided that only a person who com-

plies with the requirements of the Ordinance and code should be entitled to receive and retain such a permit. No permit fees were provided for under the provisions of this Ordinance.

"(11) On August 25, 1959, the Governing Body of the City of Russell, Kansas, passed Ordinance No. 950, which also adopted by reference Milk Ordinance and Code-1953 Recommendations of the Public Health Service, to be effective from and after the 15th day of September, 1959. This Ordinance amended Section 1 of Ordinance No. 893 in minor particulars and amended Section 8 of Ordinance No. 893 by adding thereto an emergency clause providing that the health officer or his authorized representative may authorize milk and milk products to be delivered into and be distributed in said City by persons not licensed under the provisions of Section 2 of the Ordinance during limited periods upon a finding that such delivery and distribution is necessary to the health and welfare of the inhabitants thereof. Section 2 of Ordinance No. 950 reads as follows:

" 'Section 2. PERMIT FEES. No permit shall be issued to any milk producer, milk hauler or operator of a milk plant or wholesale distributor until the applicant for such permit shall have paid to the City Clerk the following annual fees:

" '(1) For each Milk Producer producing milk for sale in the City of Russell, Kansas, $1.00 for each producing cow.

" '(2) For each Milk Hauler hauling milk to a milk distributor or milk plant or wholesale distributor for ultimate sale in the City of Russell, Kansas, $5.00 for each vehicle used by such hauler.

" '(3) For each Operator of a milk plant or wholesale distributor which purchases raw milk and processes or contracts for the processing of the same for re-sale in the City of Russell, Kansas, $150.00 per year; Provided, That no license shall be issued to the operator of any milk plant or wholesale distributor except for the processing and sale of milk produced by licensed milk producers.

" 'All permits issued under the provisions of this Ordinance shall expire on December 31st of the calendar year for which such license was issued. Any permit issued after June 30th of any calendar year may be issued upon payment of ½ of the annual fees as hereinbefore set forth.' "

It will be noticed that the district court sets out in finding 11, *supra,* that section 8 of ordinance No. 893 was amended by adding an emergency clause thereto. This was done by simply adding a proviso and the provision was in reality taken from the original section 2 of ordinance No. 893, although somewhat rephrased.

It would appear that the language of section 8, apart from the emergency clause which was added in the amended ordinance No. 950, is of importance. Section 8, as it stood in ordinance No. 893 and as it now appears in ordinance No. 950 together with its head-notes in No. 950 but minus the emergency clause just referred to, reads as follows:

"Section 8. MILK AND MILK PRODUCTS FROM POINTS BEYOND THE LIMITS OF ROUTINE INSPECTION; EMERGENCIES. Milk and milk products from points

beyond the limits of routine inspection of the City of Russell, Kansas, may not be sold in the City of Russell, Kansas or its police jurisdiction, *unless produced and/or pasteurized under* provisions equivalent to the requirements of this ordinance: *Provided,* That the health officer or his authorized representative shall satisfy himself that the health officer having jurisdiction over the production and processing is properly enforcing such provisions, and that the State Board of Health shall have certified to the health officer or his authorized representative that the production and pasteurization of such milk rates not lower than ninety per cent (90%) under the United States Public Health Service rating system. Every distributor of milk and milk products sold or otherwise distributed within the City of Russell, Kansas or its police jurisdiction shall furnish the health officer or his authorized representative upon demand, a true statement, covering a period of not to exceed twelve (12) months preceding such demand, of the actual quantities of milk and milk products of each grade purchased and sold, together with a list of all sources, records of inspections and tests: *Provided,* That milk used for manufacturing purposes shall not be construed as coming under the provisions of this article." (Italics supplied.)

Plaintiff in its brief urges several reasons why the ordinance No. 950 is invalid. It is argued that the ordinance places a tax upon a farm product in violation of G. S. 1949, 12-1617; that section 8 of the new ordinance fails to define "limits of routine inspection" and deprives the plaintiff of due process of law in conferring arbitrary power upon the health officer of the defendant city; and finally it is argued that the ordinance constitutes an unwarranted extension of municipal power and discriminates against plaintiff.

While plaintiff in its brief tends to separate each argument made, we would rather consider the ordinance as a whole in the light of the somewhat over-lapping objections.

Turning first to subsection (1) of section 2, *supra,* we wonder how many of the milk producers who control the 3,829 cows producing milk for the plaintiff's Hillsboro plant had an idea that they were producing milk for the city of Russell. Actually only a very few of the cows were so producing, since only three-tenths of one percent of plaintiff's milk was sold in Russell. But under the ordinance as construed by defendant city, plaintiff is to be compelled to see that a dollar annual fee is paid to defendant city for each one of the 3,829 cows.

We notice in section 8 above but do not comment upon the indefinite effect of the italicized phrase, "unless produced and/or pasteurized under etc." The parties have not briefed this point.

Under section 8, it would appear that the health officer is authorized to accept and to demand certificates of inspection for producers and operators who are outside and beyond the limits

of routine inspection of the defendant city. This language was contained in ordinance No. 893, and is retained in the new ordinance. Do producers beyond the limits of routine inspection pay the annual fees provided in section 2? What is the definition of routine inspection and the limits thereof?

The health officer of the city avoided any question of whether plaintiff was required to pay the fees. He simply said that as he read the ordinance he must inspect each producer which might furnish milk to the city. It apparently made no difference to the health officer how many other health officers had likewise inspected the producers and the operator, and that these other inspectors were basing their inspection on the same milk code that would be the basis for his own inspection.

The trial court found that plaintiff's plant and producers were inspected by approximately six inspectors including the state board of health. Still the court found that plaintiff was not beyond the bounds of routine inspection because fresh milk in refrigerated trucks could be shipped into Russell.

The district court did not deal with the question of the multiplicity of inspections. But it may be noted that in the introduction to the standard Milk Ordinance and Code of 1953, which is incorporated by reference in ordinance No. 950 as well as in No. 893, it is said:

"An important purpose of this recommended standard is to facilitate the shipment and acceptance of high-grade milk from one area to another, both interstate and intrastate."

It may be observed that while the city was operating under ordinance No. 893, the city health officer did not attempt to make any inspections outside the Russell, Hays and Ellis area or to obtain certificates and reports of inspections by other health officers from plaintiff. The officer checked plaintiff's milk only by bacteriological tests which may be conceded to be an unsatisfactory method of determining the purity and grade of milk. But we do not find any suggestion that the health officer could not have required such showing of inspections by other officers as the ordinance provided for in section 8.

As to the effect of section 8 in ordinance No. 950, the argument of the defendant is not quite clear. Considerable stress is laid upon the so-called emergency clause which authorizes the health officer to allow the admission of milk from persons not licensed

under section 2 during limited times of emergency. We are uncertain whether the claim is that the whole of section 8 is simply to be applicable in times of emergency or that the added proviso shows that producers and operators outside the "limits of routine inspection" must have paid appropriate license fees.

The evidence showed that plaintiff sold its grade A milk in more than a hundred cities in Kansas, and the district court so found. What would happen to plaintiff's business if each of these one hundred cities adopted an ordinance patterned upon the scheme of ordinance No. 950? The only dairy which would then be able to do business would be a dairy which sold all of its milk to one city. While many people may prefer to do business with a local dairy, it is not true that mere bigness of a business makes it evil *per se.*

This court is fully cognizant of the necessity of the protection of the milk supply of the city of Russell, and of all cities, in the interest of public health. Attention may be directed to *Nebbia v. New York,* 291 U. S. 502, p. 525, 78 L. Ed. 940, 54 S. Ct. 505, 89 A. L. R. 1469; *State, ex rel., v. Fleming Co.,* 184 Kan. 674, p. 678, 339 P. 2d 12; *City of Beloit v. Lamborn,* 182 Kan. 288, 321 P. 2d 177; *Dorssom v. City of Atchison,* 155 Kan. 225, 124 P. 2d 475; and the list of authorities could easily be greatly lengthened.

The defendant stresses the case of *City of Beloit v. Lamborn,* supra, where a permit fee of $225, later revised downward, for milk distributors was held not to be excessive and not to constitute a tax upon the sale of milk. It will be noted that in the Lamborn case there was no fee required which was based upon the number of cows owned by a producer. It is also of some interest that the Beloit ordinance definitely contained language similar to section 8 of the ordinance here involved. There is a definite warning to cities in the framing of such ordinances to be found in paragraph 5 of the syllabus of the Lamborn case.

In *Dorssom v. City of Atchison,* supra, we did uphold an ordinance which provided for a fee for the producer of milk based upon the number of cows owned by the producer. But in that case there was no contention that all of the milk so produced would not be sold in the City of Atchison. The producers involved were residents of Atchison county and, as far as the facts show, were subject to inspection only in Atchison county.

Viewing ordinance No. 950 as a whole and as construed by the officers of the defendant city, this court is now constrained to de-

cide that the ordinance contains an unlawful discrimination against the lawful business of the plaintiff and thus deprives plaintiff of due process of law in violation of the state and federal constitutions. It is impossible to segregate the invalid parts of the ordinance, and therefore the whole ordinance must fall as unconstitutional and void.

The judgment of the district court must be reversed with directions to enter judgment for the plaintiff. It is hereby so ordered.